# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

ON MOTION FOR REHEARING

NO. 03-06-00468-CR

**Ricky Tapps, Appellant**

**v.**

**The State of Texas, Appellee**

FROM THE DISTRICT COURT OF TRAVIS COUNTY, 299TH JUDICIAL DISTRICT
NO. D-1-DC-06-90-40-49, HONORABLE JON N. WISSER, JUDGE PRESIDING

## O P I N I O N

We withdraw the opinion and judgment issued April 17, 2008, and issue the following opinion and judgment in their place.

A jury found Ricky Tapps guilty of unlawful possession of a firearm by a felon. After finding two enhancement paragraphs true, the district court assessed sentence at thirty-two years in prison. Tapps raises several issues on appeal. He contends that the evidence is legally and factually insufficient to support the conviction because he is not a felon in the sense intended by the statute and that the State failed to carry its burden of proof to show that he possessed a firearm within the time period prescribed by the statute prohibiting felons from possessing firearms. He complains that the trial court allowed the State to ask a defense witness if she knew Tapps was a sex offender, and contends that the admission of evidence of extraneous offenses was egregious error. He also

contends that he received ineffective assistance of counsel because his trial counsel did not object to the admission of the evidence of extraneous offenses. Finally, he contends—and the State concedes—that the judgment should be reformed to reflect that the court found only two enhancement paragraphs true, rather than four. We modify the judgment by eliminating the findings of true regarding two of the four enhancement paragraphs and by correcting the date recited for the commission of the offense, and affirm the judgment as modified.

*Factual and Procedural Background*

The eyewitnesses to the incident that resulted in the charges against Tapps—all of whom testified—were the owner, foreman, and employee of a construction company where Tapps had worked as a flagger. Owner Donny Gamblin is the nephew of foreman David Gamblin and the cousin of employee Landin Gamblin. All three testified to the same version of events. The Gamblins' company was installing a water and sewer main on Thompson Lane, near Callahan's General Store in Austin. Around 5 p.m. on Friday, January 20, 2006, Donny and David were discussing the project at the construction site, while Landin and the other employees waited about half a mile away at the "staging area." Friday is payday at the company and paychecks are handed out at the jobsite. Nearby businesses were closed or closing because of the lateness of the hour.

Tapps drove up in a tan Oldsmobile with a dark top. He left the car running, and approached David and Donny. Tapps believed he was owed a week's pay, but the Gamblins believed he had been paid in full. During the conversation between Tapps, David, and Donny, Landin arrived. The Gamblins testified that the discussion did not get heated, although Tapps, who was normally quite calm, seemed agitated. The discussion lasted about ten minutes and, according

2

to Donny, was becoming repetitive. Landin then noticed and mentioned to Tapps that the Oldsmobile was slowly rolling backwards. The Gamblins testified that they then heard a loud sound, like a tire blowing out or a car backfire. Then they noticed that Tapps was holding a black .38 revolver. They had not seen him retrieve it, but surmised that the gun had been in one of his pockets where his hands had been. They also noticed a dime-sized bullet hole in the right front side of the tan Oldsmobile. David and Landin testified that Tapps told them he had more firearms in the car's trunk.[1] Tapps did not point the revolver at the Gamblins or directly threaten them. The Gamblins did, however, retreat to their respective vehicles, and David and Donny called the police. The Gamblins and Tapps then left the construction site in their cars. The Gamblins waited for the police nearby. Tapps was arrested at his home eleven days later. There were no firearms, ammunition, or a tan Oldsmobile at the house where he was arrested.

Tapps's friend, Marie Higgins, testified that she owns a 1990 Oldsmobile Regency that is tan with a brown top. She testified that she let Tapps sleep at her house that winter because his house lacked utilities. She said she loaned him the vehicle on January 20, 2006, roughly between 5 p.m. and 7 p.m. She testified that she was not aware of any bullet hole in her car before he borrowed it or after he returned it. She testified that Tapps seemed happy before he borrowed the car and when he returned it. She also testified in response to questioning by the State that Tapps had not told her and she had not known that he was a convicted sex offender.

---

[1] A police report noted that Landin told the officer Tapps opened his trunk to show the firearms.

At trial, the defense brought the tan Oldsmobile to the courthouse and requested a jury inspection of the car. The record reflects that the jurors inspected the car in the courthouse garage. The record does not reflect what that inspection revealed and no photographs of the car were admitted into evidence. However, counsel for both Tapps and the State acknowledged in final argument that the relevant section of the car appeared undamaged, although the prosecutor noted that the incident had occurred on January 20 and the defense produced the car for inspection by the jury on July 11. Other than the visual inspection, the record does not reflect any other testing or examination of the car by either the State or the defense.

*Analysis*

Tapps was convicted of being a felon in possession of a firearm. The statute provides in relevant part as follows:

> A person who has been convicted of a felony commits an offense if he possesses a firearm:
>
> (1) after conviction and before the fifth anniversary of the person's release from confinement following conviction of the felony or the person's release from supervision under community supervision, parole, or mandatory supervision, whichever date is later.

Tex. Penal Code Ann. § 46.04(a) (West Supp. 2007). Evidence showed that Tapps was convicted of the state jail felony of failure to comply with sex offender registration on December 14, 2004. *See* Tex. Code Crim. Proc. Ann. art. 62.102 (West 2006). Tapps was sentenced to seven months in state jail, and was to get credit for 133 days time served.

4

Tapps contends that the evidence of his guilt is insufficient as a matter of law because there was no evidence he was a convicted of the type of felony that is covered by section 46.04. Tapps does not challenge the veracity of the evidence of his 2004 conviction, but argues that a state jail felony is not a felony for purposes of the firearm possession statute. Tapps acknowledges that the statute defining "felonies" includes state jail felonies:

> (a) Felonies are classified according to the relative seriousness of the offense into five categories:
>
> > (1) capital felonies;
> > (2) felonies of the first degree;
> > (3) felonies of the second degree;
> > (4) felonies of the third degree; and
> > (5) state jail felonies.
>
> (b) An offense designated a felony in this code without specification as to category is a state jail felony.

Tex. Penal Code Ann. § 12.04 (West 2003); *see also id*. § 1.07(23) (West Supp. 2007) (felony is "an offense so designated by law or punishable by death or confinement in a penitentiary").[2] Tapps relies on a court of criminal appeals opinion that recognized a distinction between felonies and state jail felonies in a statute governing enhancement by previous offenses. *See Campbell v. State*, 49 S.W.3d 874 (Tex. Crim. App. 2001). The statute at issue in that case provides that, when a person is on trial for a state jail felony, proof of two prior convictions for "state jail felonies" enhances the punishment to that of a third-degree felony, while proof of two prior convictions for "felonies" enhances the

---

[2] The fact that all unclassified felonies are statutorily presumed to be state jail felonies underscores the conclusion that state jail felonies are felonies unless the language of the particular statute in question indicates otherwise. *See* Tex. Penal Code Ann. § 12.04(b) (West 2003).

punishment to that of a second-degree felony. Tex. Penal Code Ann. § 12.42(a) (West Supp. 2007). The *Campbell* court held that, "*as used in subsection 12.42(a)*, the terms 'felony' and 'state jail felony' are mutually exclusive." 49 S.W.3d at 878 (emphasis added).

This distinction between state jail felonies and other felonies does not appear in the statute governing unlawful possession of a firearm which is at issue here. *See* Tex. Penal Code Ann. § 46.04. This statute refers only to a person convicted of "a felony." The absence of any language in section 46.04 indicating an intent to treat felonies and state jail felonies differently distinguishes this statute from the statute at issue in *Campbell*. The consistent use of the unmodified term "felony" in section 46.04 indicates that there is no distinction in this statute between levels or types of felonies. *See* Tex. Penal Code Ann. §§ 12.04, 46.04. Since there is no indication of a legislative intent for the term "felony" not to include state jail felonies in section 46.04, we apply the general definition of "felony" found in section 12.04. Tapps's 2004 conviction for a state jail felony was sufficient to make him a "person convicted of a felony" pursuant to the statute prohibiting the possession of a firearm by a felon.

Tapps also contends that the State failed to meet its burden of proof because the evidence was insufficient as a matter of law to show that he was released from confinement within five years of the offense at issue in this case. A convicted felon commits a crime by possessing a firearm during the period "after conviction and before the fifth anniversary of the person's release from confinement following conviction." Tex. Penal Code Ann. § 46.04(a)(1). Tapps argues that, because there is no evidence that he was "released from confinement," the State failed to carry

6

its burden of proof to show that he, in fact, possessed a firearm within the period prescribed by the statute.

Tapps relies on the proposition that an element of the offense that the State was required to prove is that he possessed a firearm "before the fifth anniversary of his release from confinement following conviction." He stresses that the State must prove the date of release from confinement, and without such proof acquittal is required, and cites the unpublished case of *McClure v. State*, No. 12-05-00209-CR, 2006 Tex. App. LEXIS 5907 (Tex. App.—Tyler, June 30, 2006, no pet.). However, the issue in *McClure* was whether the defendant's stipulation to the fact of a previous felony conviction was, *by itself*, sufficient to support a conviction under section 46.04. The *McClure* court held that there was a timing element to a violation of section 46.04 and proof of a prior conviction without some proof of when the possession of firearms occurred in relation to that conviction was not enough to support a conviction under the statute. The *McClure* court expressly noted: "On this record, we cannot conclude that Appellant was within five years *of his conviction or* release from confinement when the rifles were found in his home." *McClure*, 2006 Tex. App. LEXIS 5907, at *11. The *McClure* court was faced with a complete failure of proof of the timing of the prior conviction. The court acknowledged that if there had been at least proof of the date of the prior conviction there might have been sufficient proof to support the conviction for a violation of section 46.04 depending on when the prior conviction occurred—i.e. within five years of the possession of the firearm.

We do not read section 46.04 to necessarily require proof of the date of release from confinement in all cases. Under section 46.04, the period during which firearm possession by a felon is forbidden begins on the date of conviction (the date one is "convicted of a felony") and ends on

the fifth anniversary of the person's release from confinement or the person's release from any form of supervision or parole, whichever date is later. *Id.*; *see also* Tex. Penal Code Ann. § 46.04(a)(1). Thus, the *minimum* period that a felon will be prohibited from possessing a firearm—assuming the felon is released from confinement or supervision on the date of conviction or is never confined—is five years from the date of conviction. The date of release from confinement is necessary to determine the *maximum* length of this period specifically when the period extends beyond five years from the date of conviction. The date of release from confinement is not necessary when the alleged possession occurs within five years of the date of conviction because the period of prohibition extends for this duration in any event. In this case, Tapps possessed a firearm just over a year after his conviction, which is well within the five-year period following his conviction. Proof of the date of conviction together with the date of possession in this circumstance—undisputedly December 14, 2004, and January 20, 2006—was sufficient to prove that Tapps was within the period prescribed by the statute barring possession of firearms by felons.[3]

Tapps also argues that the evidence was factually insufficient to support his conviction. In a factual sufficiency review, we view the evidence in a neutral light and ask whether a jury was rationally justified in finding guilt beyond a reasonable doubt. *Watson v. State*,

---

[3] Tapps contends that the significance of the State's failure to prove a release date is that he might have been a fugitive or never have been confined, and therefore, never released. Thus, according to Tapps, the court cannot simply conclude that there must have been a release date at some point because it is possible that there is not one. Setting aside that this allegation conflicts with testimony that he was arrested and served at least 133 days before trial, this argument is relevant only if the statute absolutely requires proof of the date of release from confinement in all cases. However, our view is that the lack of proof of a release date only has significance if the State is alleging that a felon possessed a firearm more than five years after the date of conviction. Here, the possession took place within the first five years after conviction. Thus, under this construction of section 46.04, proof of the date of conviction is sufficient to satisfy the timing element of the statute and the trial court did not need to presume or guess at anything with respect to a date of release.

204 S.W.3d 404, 414 (Tex. Crim. App. 2006). We then determine whether the evidence supporting the verdict is so weak that the verdict is clearly wrong and manifestly unjust or whether the verdict is against the great weight and preponderance of the evidence. *Id*. We will not reverse a case on a factual sufficiency challenge unless we can say, with some objective basis in the record, that the great weight and preponderance of the evidence contradicts the jury's verdict. *Id*. at 417. Tapps points out that the State did not produce a firearm, a bullet, a shell casing, or a bullet hole in a car. He contends that the Gamblins' story that Tapps shot his own car is improbable and bizarre. He notes that no one else reported hearing a gunshot. He points out inconsistencies in the Gamblins' description of his clothes on the day of the incident. He further notes an inconsistency between the comment reported by police that Tapps showed the Gamblins a cache of weapons in the car's trunk and the Gamblins' trial testimony in which they variously did not mention or denied seeing other weapons. Tapps contends that the weakness of the evidence favoring conviction underscores his belief that the admission of irrelevant and inflammatory testimony regarding extraneous offenses or hypothetical actions by typical criminals unfairly prejudiced him in the eyes of the jury. He also complains that the sentence of thirty-two years is too harsh for the offense, especially based on the evidence.

Ultimately, the resolution of the various questions raised by Tapps regarding the evidence turn on an assessment of the credibility of the Gamblins' testimony. None of the asserted inconsistencies are fundamental problems with the evidence if one believes the testimony of the Gamblins. The Gamblins testified unequivocally that they saw Tapps holding a gun. The jury was free to believe them. Although there are some unusual features to the evidence in this case, we find

9

nothing in the record that contradicts the Gamblins' testimony in such a way that no reasonable person could believe their testimony.

We must avoid substituting our judgment for that of the fact finder, and we should not substantially intrude upon the fact finder's role as the sole judge of the weight and credibility given to witness testimony. *Jones v. State*, 944 S.W.2d 642, 648 (Tex. Crim. App. 1996). The jury is the sole judge of the weight and credibility of witness testimony. *Barnes v. State*, 62 S.W.3d 288, 298 (Tex. App.—Austin 2001, pet. ref'd). The jury may accept or reject all or any of the evidence presented by either side, may draw reasonable inferences from the evidence, and must reconcile any evidentiary conflicts. *Id*. We determine the sufficiency of the evidence by viewing the cumulative effect of all of the evidence, not each fact in isolation. *Id*. at 297. We do not find sufficient inconsistencies or weaknesses in the evidence to warrant the extraordinary step of negating the jury's determination to believe the Gamblins' testimony.

Accepting the jury's apparent credibility choice, the evidence is sufficient to support the conviction. The evidence supports the finding that Tapps was a convicted felon who had been convicted less than five years before January 20, 2006. The Gamblins' testimony supports the finding that he possessed a firearm on January 20, 2006. The evidence is factually sufficient to support the conviction.

Tapps next contends that the court erred by allowing the prosecutor to ask Higgins if she knew that Tapps was a registered sex offender. Tapps called Higgins to establish that she lent him her car and that it did not have a bullet hole in it. The State inquired into the nature of their relationship. Higgins said she let Tapps sleep at her house, considered him a friend, but did not

10

know much about him and he did not bother her. The State then asked if Higgins knew he had a previous conviction. Tapps interrupted and objected that Higgins was not a character witness, but a fact witness. The court overruled the objection, stating "I think an inquiry into the relationship between the witness and a party is always relevant." Higgins testified that Tapps did not tell her that he was a registered sex offender.

We review the admission of evidence under an abuse of discretion standard. *Casey v. State*, 215 S.W.3d 870, 879 (Tex. Crim. App. 2007). A trial court abuses its discretion if its ruling is outside the zone of reasonable disagreement. *Id*. Evidence that does not have relevance apart from character conformity is inadmissible. *Id*. (citing Tex. R. Evid. 404(b)). Extraneous offense evidence is admissible under Rule 404 if it is relevant to a fact of consequence apart from its tendency to show conduct in conformity with character. *Id*.

Inquiry into the nature of the relationship between the defendant and a witness may be relevant to show potential bias by the witness or challenge the witness's credibility. The trial court has discretion as to the extent of cross-examination of a witness to show bias or challenge credibility. *Cantu v. State*, 939 S.W.2d 627, 635 (Tex. Crim. App. 1997). Whether the defendant has shared very personal information is relevant to showing the closeness of the relationship. This is relevance independent of relevance to show conduct in conformity with character.

Even if the admission of the testimony were erroneous, it was not harmful. Because Tapps does not make a constitutional challenge to the trial court's ruling, the error must have affected substantial rights in order to warrant reversal. *See* Tex. R. App. P. 44.2(b). A substantial right is affected when the error had a substantial and injurious effect or influence in determining the

11

jury's verdict. *See King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997). A criminal conviction should not be overturned for non-constitutional error if the appellate court, after examining the record as a whole, has fair assurance that the error did not influence the jury, or had but slight effect on its verdict. *See Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998). "It is well established that the improper admission of evidence does not constitute reversible error if the same facts are shown by other evidence which is not challenged." *Crocker v. State*, 573 S.W.2d 190, 201 (Tex. Crim. App. 1978); *see also Mitchell v. State*, 191 S.W.3d 219, 224 (Tex. App.—San Antonio 2005, pet. ref'd). Evidence that Tapps was a sex offender was introduced just before Higgins testified. In the jury's presence, the parties stipulated to the admission into evidence of records pertaining to Tapps's 2004 conviction for failure to register as a sex offender. The admission of Higgins's testimony on the same subject was harmless even if it was erroneous.

Tapps contends that egregious error occurred upon the admission into evidence of Austin Police Officer Eric Gates's testimony that he worked in APD's Career Criminals Unit. Tapps did not object to the police officer's statement at trial. He encourages this Court to import the concept of egregious error from cases relating to unobjected-to jury charge error. *See Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984). Egregious error goes to the very basis of the case, deprives the accused of a valuable right, or vitally affects his defensive theory. *See id*. at 172. The error must deprive the defendant of a fair and impartial trial. *See Jimenez v. State*, 32 S.W.3d 233, 235 (Tex. Crim. App. 2000). A party waives error in the admission of evidence by failing to object at the time evidence is offered. *Williams v. State*, 491 S.W.2d

12

142, 143 (Tex. Crim. App. 1973); *see also* Tex. R. App. P. 33.1. Even properly preserved error can be waived by failing to object when other similar evidence is offered. *Leday v. State*, 983 S.W.2d 713, 717-18 (Tex. Crim. App. 1998). These well-established requirements for preservation are inconsistent with the concept of egregious error for unobjected-to evidence—particularly evidence such as that at issue here. The officer's statement that he worked in the Career Criminals Unit did not go to the very basis of the case, deprive the accused of a valuable right, vitally affect his defensive theory, or deprive Tapps of a fair and impartial trial. We see no legal basis for extending the egregious error theory relating to unobjected-to jury charge error to the admission of unobjected-to evidence. The admission of this evidence was not reversible as egregious error.

Tapps also asserts that he received ineffective assistance of counsel. He focuses on trial counsel's failure to act in three instances. He contends that his counsel should have: (1) stipulated to evidence of his prior offenses outside the presence of the jury, (2) objected to Officer Gates's repeated description of his employment as being in the "Career Criminals Unit," and (3) objected to the prosecutor's statement in closing argument that the State had not seen Higgins's car until that day as outside the record and grossly improper.

We evaluate claims of ineffective assistance of counsel against the standard set forth in *Strickland v. Washington*. *See* 466 U.S. 668, 687 (1984); *Hernandez v. State*, 988 S.W.2d 770, 774 (Tex. Crim. App. 1999). In deciding a claim of ineffective assistance of counsel, we must determine whether an attorney's performance was deficient, and if so, whether that deficiency prejudiced the defense. *Strickland*, 466 U.S. at 687; *Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999). An attorney's performance is deficient if it falls below an

13

objective standard of reasonableness. *Strickland*, 466 U.S. at 688; *Thompson*, 9 S.W.3d at 812. Deficient performance is prejudicial when, but for the attorney's unprofessional conduct, there is a reasonable probability that the outcome of the proceeding would have been different. *Strickland*, 466 U.S. at 694; *Thompson*, 9 S.W.3d at 812. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Strickland*, 466 U.S. at 694; *Thompson*, 9 S.W.3d at 812. Absent both showings, we cannot conclude that there has been a breakdown in the adversarial process that renders the result of a trial unreliable. *Thompson*, 9 S.W.3d at 813. In determining whether an attorney's performance was deficient, we apply a strong presumption that the attorney's conduct was within the range of reasonable professional assistance. *Id*. at 814. We do not speculate about an attorney's strategy. *Blevins v. State*, 18 S.W.3d 266, 271 (Tex. App.—Austin 2000, no pet.). We review the effectiveness of counsel in light of the totality of the representation and particular circumstances of each case. *Thompson*, 9 S.W.3d at 813.

Tapps argues that his counsel should have stipulated to the fact that he had a prior felony and requested that the trial court not allow the jury to know that the felony was for failing to register as a sex offender under the theory that the nature of the prior felony was not relevant to this prosecution and was more prejudicial than probative. He contends that this particular error was compounded because the failure to register offense also revealed the additional prior sex offense. He relies on the U.S. Supreme Court's opinion in *Old Chief v. United States*, 519 U.S. 172 (1997), in which the Court held that under certain circumstances *and with proper objection and stipulation* a defendant may be entitled to prevent a prosecutor from putting the details of a prior offense before a jury when the only relevant aspect of the prior offense is the fact of conviction and the defendant

14

is willing to stipulate to that fact. The Court based its holding on Rule of Evidence 403 and made it clear that the "more prejudicial than probative" analysis would have to be done on a case-by-case basis. *Id*. at 191-92.

The strategy decision of whether to object to the admission of evidence is often subject to debate, particularly in hindsight. Here, in order to agree with Tapps's argument, we would have to conclude that the decision by Tapps's counsel not to stipulate to the prior conviction and not to object to the admission of the nature of the prior conviction was deficient, but also that in reasonable probability the outcome of the trial would have been different. This requires a two-step process in this case. First, we would have to conclude that, had the trial court been presented with the proposed request to exclude the nature of the prior conviction, the Rule 403 analysis would require a finding that the admission of the nature of the conviction would be more prejudicial than probative on this record. Second, we would have to conclude that in reasonable probability the jury would not have convicted Tapps of possessing a firearm on January 20, 2006, if it had not been aware that he had a prior conviction for failing to register as a sex offender. We are not persuaded of either proposition.

Tapps fails to explain how the fact that his prior conviction was for failing to register as a sex offender unfairly prejudiced the jury against him in their evaluation of whether he was guilty of unlawfully possessing a firearm. He simply asserts that his counsel was ineffective in failing to pursue this course and compare this case to *Old Chief*. However, the Rule 403 considerations in *Old Chief* are not similar to those in this case. The defendant in *Old Chief* sought to stipulate to a prior felony very much like the charged felony to avoid its mention at his trial. *Id*. He was charged

with assault with a dangerous weapon, using a firearm in relation to a crime of violence, and being a felon in possession of a weapon, and sought to stipulate to a prior conviction for assault causing serious bodily injury. *Id*. at 175. Thus, there was a concern that the jury might improperly consider that the defendant had been found guilty of possessing and using a firearm in the past and, therefore, possibly think it more likely that he had done so in the charged instance. The *Old Chief* court recognized that, if the charged offense and the prior offense were dissimilar in time and severity, the defendant might instead want to have the nature of the prior offense fully explored on the record. *Id*. at 185 n.8.[4]

Here, neither the failure to register nor the unspecified previous sex offense was similar to the charge of unlawful possession of a firearm. At most, both the failure to register as a sex offender and the unspecified sex offense show that Tapps did not appreciate the restrictions his previous offenses placed on his current behavior. The probative effect of this is the same whether the simple fact of conviction is known to the jury or they are also made aware of what the convictions were for. It is entirely possible and not unreasonable that Tapps's counsel could have concluded that it would be better for the jury to be aware that the prior convictions had been for

---

[4] The Supreme Court wrote:

> It is true that a prior offense may be so far removed in time or nature from the current gun charge and any others brought with it that its potential to prejudice the defendant unfairly will be minimal. Some prior offenses, in fact, may even have some potential to prejudice the Government's case unfairly. Thus an extremely old conviction for a relatively minor felony that nevertheless qualifies under the statute might strike many jurors as a foolish basis for convicting an otherwise upstanding member of the community of otherwise legal gun possession.

*Old Chief v. United States*, 519 U.S. 172, 185 n.8 (1997).

16

nonviolent offenses such as failing to register as a sex offender than to have the jury potentially be concerned about a violent felon possessing a gun. It is not conclusive on this record that the district court would have been required to bar admission of the nature of the prior convictions under Rule 403. There is also a potential strategic reason for Tapps to have wanted the jury to hear the nature of the convictions. In these circumstances, we cannot say counsel's performance was so deficient for failing to attempt to having the nature of the prior felonies to come into evidence that it undermines confidence in the result.

Tapps also contends that his counsel should have objected to Gates's repeated statements that he works in the Career Criminals Unit. He asserts that these statements were particularly harmful when Gates stated that his experience in apprehending felons caused him to not expect to find a handgun when apprehending Tapps eleven days after the incident. Gates testified that "[i]t's common practice after an offense has occurred for suspects to try to get rid of evidence so it's not retrieved or recovered and possibly something that will be able to link them to the scene or, you know, incriminate them." Tapps contends that this testimony paints him as a career criminal, that it is highly inflammatory, and that his counsel should have objected to it.

We find no deficiency in the failure to object. The fact that Tapps has a criminal history is part of this case. Indeed, Tapps would have his counsel's performance held deficient for failing to stipulate to a prior felony conviction. The fact that Gates worked in the Career Criminals Unit might conceivably have a marginally different effect on a jury than had they heard he worked in some other unit, but it is not particularly prejudicial when the jury knows that the defendant is a repeat offender. Gates's statement that a suspect might attempt to discard evidence of a crime

17

sometime in the course of eleven days likely was not a revelation to the jurors, nor is such a technique to avoid detection unique to career criminals. Further, Tapps's counsel had Gates emphasize the hypothetical nature of his statement. On cross examination, Tapps's counsel elicited the following testimony from Gates: "I never said that Mr. Tapps [disposed of evidence]. I just—from my experience as a police officer that's common practice for suspects in serious cases to try to dispose of evidence." Counsel pressed on, asking, "The bottom line is you don't know if he disposed of any evidence in this case; isn't that correct?" Gates responded, "Correct." Tapps's counsel's performance was not deficient for failing to object to Gates naming his place of employment or describing typical criminal behavior.

Tapps also complains about the statement by the prosecutor in closing argument that "if that car had been produced to the State before the last day of trial, perhaps more forensic investigations could have been performed. But notably it wasn't."[5] Permissible jury argument includes summation of the evidence, reasonable deduction from the evidence, answer to argument of opposing counsel, and plea for law enforcement. *Allridge v. State*, 762 S.W.2d 146, 155 (Tex. Crim. App. 1988). To warrant reversal, argument must be manifestly improper, violate a statute, or inject new, harmful facts into the case. *Everett v. State*, 707 S.W.2d 638, 640 (Tex. Crim. App. 1986). The jurors knew from testimony that police had not located the car immediately after the incident or when arresting Tapps. They also knew that Higgins testified

[5] Because this assertion appears in a section dedicated to the ineffectiveness of Tapps's counsel, we assume that Tapps contends that his counsel was ineffective for failing to object to the State's argument.

18

that Tapps borrowed the car for about two hours on the date of the incident, returning it to her undamaged at about 7 p.m. that evening.

Failing to object to this comment is not grounds for reversal. The prosecutor's comment at issue injects the fact not in evidence that the State had not seen the car until the jurors did. The notion that Tapps or Higgins may have concealed the alleged bullet hole was already before the jury, however. Jurors had before them the Gamblins' testimony that Tapps shot a hole in the car he was driving at 5 p.m., and Higgins's testimony that the car was undamaged two hours later and had never had a bullet hole. Jurors knew that the State had not captured the car either at the scene of the incident, anywhere else immediately after the incident, at Tapps's home eleven days later, or in the five months prior to trial. While the district court might have sustained an objection to the argument and given a requested instruction to disregard, the comment at issue warranted no more. The prosecutor's disputed comment did not inject for the first time the idea that Higgins might not be credible or might even be in league with Tapps. That implication is inherent in the presentation of the conflicting versions of the car's integrity on the day of the incident. Even if the failure to object to this argument were deficient performance, it did not unfairly prejudice the defense.

Tapps's counsel filed motions in limine, made objections, and examined witnesses. He emphasized the lack of physical evidence supporting the Gamblins' story and noted discrepancies in their very similar versions of events. He requested and received a jury inspection of the car. We cannot say that the alleged defects in his performance—separately or together—prejudiced Tapps's defense or undermine our confidence in the verdict when viewed in the totality of counsel's performance.

19

Tapps contends and the State concedes that the judgment incorrectly states that the district court found true as to all four prior felony convictions alleged in the enhancement paragraphs. The State concedes that the judgment should be reformed as Tapps suggests, and additionally requests that the judgment's statement of the date of the instant offense be corrected. We will modify the judgment as requested.

On motion for rehearing, Tapps contends and the State concedes that the written trial court judgment incorrectly states that the district court found true as to a prior felony conviction for Molestation of a Juvenile. The State requests that the written trial court judgment be modified to reflect that Tapps was previously convicted of Indecent Behavior with a Juvenile. We grant the motion for rehearing and the State's request.

### *Conclusion*

The written judgment of the district court is hereby modified to delete the findings of true regarding allegations of convictions for Attempted Murder and for Possession of Illegal Contraband in a Department of Correction Facility. The written judgment is also modified to replace the finding of true that Tapps was previously convicted of Molestation of a Juvenile with a finding of true that Tapps was previously convicted of the felony offense of Indecent Behavior with a Juvenile. The written judgment is further modified to state on page two that the instant offense was committed on January 20, 2006, deleting the statement that it occurred on December 14, 2004. The

judgment shall remain otherwise unchanged, reflecting a conviction for the offense of Unlawful Possession of a Firearm committed on January 20, 2006, enhanced by prior offenses of Indecent Behavior with a Juvenile and Felon in Possession of a Firearm. We affirm the judgment as modified.

_____

G. Alan Waldrop, Justice

Before Justices Patterson, Pemberton and Waldrop

Modified and, as Modified, Affirmed on Motion for Rehearing

Filed:   June 6, 2008

Publish