In The
*Court of Appeals*
*Ninth District of Texas at Beaumont*
**NO. 09-21-00063-CR**

**JAMES RAY BATES, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 221st District Court**
**Montgomery County, Texas**
**Trial Cause No. 19-11-15656-CR**

**MEMORANDUM OPINION**

James Ray Bates appeals his conviction for failure to comply with registration requirements as a sex offender. *See* Tex. Code Crim. Proc. Ann. art. 62.102(b)(3). A jury found Bates guilty of failure to comply with Sexual Offender Registration Requirements, specifically, "enter[ing] the premises of any school in this state during the standard operating hours of the school" and not…"immediately notify[ing] the administrative office of the school and the person's registration status

1

under Chapter 62, Sex Offender Registration Program, Texas Code Criminal Procedure."

In the first two of his four issues on appeal, Bates argues the jury charge contained egregious errors because it allowed the jury to convict without finding that he knowingly entered a school premises and failed to allege an essential element of the offense charged, namely the two prior convictions for which Bates was required to register as a sexual offender. Finally in his last two issues, he argues that there was insufficient evidence to demonstrate that he knowingly entered the premises of a school without notifying the school's administrative office and that he has been previously convicted of two sexually violent offenses. We affirm.

## Background

Eric Erickson testified that on the morning of April 26, 2019, he was at Sacred Heart Catholic School dropping off his children for school. On Fridays, he takes his children to Chick-Fil-A to have breakfast before school and then waits in his truck in the parking lot to attend chapel with his children at 8:30 a.m. On that morning, he was checking emails while parked in the parking lot waiting for chapel to start when he was approached by Bates. According to Erickson, the parking lot he was in functions as both the church parking lot and parent parking lot for the school, and is not gated. Bates approached him and told him he "was hungry[.]" Erickson offered Bates some hash browns from his earlier breakfast and Bates rejected the food. He

2

then described Bates as becoming agitated, and Erickson asked Bates to leave the premises. Bates became more agitated and Erickson reached to get his cell phone to call the police. During this confrontation, Erickson said that the school children were "[t]o our left and to our right walking in single file with their teachers from the school to the church, both sides of where this was happening." He stated he wanted to call the police because he was concerned with the way Bates was acting near the children. At that moment, a police officer approached Bates and Erickson and took Bates aside. Erickson was told to stay by his truck and he waited approximately thirty minutes to speak to the officer. Erickson could not confirm the direction from which Bates approached his truck, but stated that Bates approached his vehicle within 25 to 30 feet from the school.

Kristophorr Christenson testified that he is a Conroe police officer. On the morning of April 26, 2019, he was being paid to be uniformed security for the school and the church. He described his duties as watching children safely crossing the crosswalks, and watching for vagrancy or homeless that could interfere with the day-to-day activities of the school. Christenson stated that he first observed Bates when Bates broke through a line of children coming from the school to approach Erickson's truck. He then observed Bates get into an argument near Erickson's truck. Christenson went to investigate "to make sure nothing was going on." As he approached the vehicle, he spoke to Erickson first, who confirmed that Bates asked

3

for food and then turned down the food Erickson offered him, leading to Bates and Erickson exchanging words. The officer then walked toward Bates, stopped him and asked him what he was doing. He asked Bates for identification and Bates immediately gave him his "sex registry card." He questioned Bates as to whether he should be on a property with children during school hours. Christenson then contacted the on-call district attorney who confirmed there was probable cause to arrest Bates, and Bates was subsequently arrested and transported to the Montgomery County Jail.

During cross-examination, Christenson stated that on that day in April, the "entire premises" was being used for both school and church purposes. Christenson explained that during school hours, the church parking lot is used for school functions. But he confirmed that there is no line separating the church from the school that would indicate to a person when he is crossing from the church to the school. Christenson stated he never saw Bates in the "western parking lots closest to the school[.]"

Tosha Hyde testified that she works for the Conroe Police Department as a sex offender registration specialist. She explained that her duties include "keep[ing] up with the sex offenders that are currently residing in the city limits of Conroe. I make sure that they come in for their annual verification appointments, their 90-day verification or their 30-day verification. I update the DPS system for the State of

4

Texas for any and all new information for each sex offender." She testified that she met with Bates on April 3, 2019, confirmed that he could read and write, and went over all the rules with him, and had him initial by each rule, sign, date and provide a right thumbprint. A copy of the rules signed by Bates was entered into evidence.

The form contained the following paragraph signed by Bates.

> **Entry Onto School Premises**: I understand that if I enter the premises of any private or public school or daycare center in Texas during standard operating hours of the school, I shall immediately notify the administrative office of the school of my presence and registration status. The office may provide a chaperon to accompany me while I am on the premises of the school. These requirements will NOT apply if I am a student enrolled at the school, a student from another school participating at an event at the school; OR a person who has entered into a written agreement with the school that exempts me from these requirements.

Hyde explained that there is no rule on how far Bates has to stay away from a child if Bates is attending a church service. Hyde stated that Bates is not allowed to go to the church during school hours if the church is considered a school.

Deb Brown testified that she is the principal at Sacred Heart Catholic School. A normal school day at Sacred Heart is Monday through Friday, from eight o'clock in the morning to three-fifteen in the afternoon. She stated there are also an after-school care program and after school extracurricular activities from three-fifteen o'clock to six o'clock in the afternoon. Brown described the school as across the street from the church but stated that the school uses the church regularly for "educational purposes[.]" According to Brown, the school is a parochial school and

5

uses the church property to "attend mass every Friday and every holy day of obligation. Religion is part of Sacred Heart's curriculum. We also go for reconciliation. We have graduation in the church. We have first communion in the church. We also use it if we have retreats and things of that nature where we have guest speakers." Brown testified that in April 2019, there were signs posted in the church parking lot explaining the layout of the Sacred Heart church and school. According to Brown, the church, the lot next to the church, and the school parking lot are all considered "one entity, Sacred Heart parish." An exhibit was entered showing two signs in the church parking lot. The signs stated the following: "Thou Shalt Not Park This reserved space was purchased for one year at the Annual Oktoberfest by THE [School member] FAMILY." Brown stated the signs were purchased by two school families during the Sacred Heart's Oktoberfest. Brown described that

> the entire premises where the school is located is all fenced in. So all the gates are locked. So in order to be able to get into the school, you have to go in through the gates that you just showed.

When questioned during cross-examination, Brown stated the church is used by the school…"to attend mass and when we go to stations of the cross and graduation." Brown acknowledged that the school cannot control who is in the church parking lot. She testified that the church has charitable programs for homeless individuals and that anyone can use those programs. She was not aware of

6

Bates ever attempting to breach the fence surrounding the school. According to Brown, the church and the school do not share the same address, but there are several signs in front of the church and school zone signs identifying the school. Pictures of the signs were admitted at trial.

Mitzy Barrera, the school secretary, testified that to her knowledge, Bates had never entered into the school buildings or notified the school office that he was on the school premises or wished to enter the school buildings.

### Issues One and Two

In his first two issues, Bates challenges the trial court's jury charge. First, Bates argues that the trial court's jury charge contained egregious error because it allowed the jury to convict without finding that Bates knowingly entered the premises of a school. Specifically, he argues that "[e]ntering the premises of a school isn't the same as failing to report a new address when you have been previously told that you must do so. Accordingly, the State must prove that the defendant 'knowingly' entered the premises of a school to obtain a conviction." Second, Bates argues that the jury charge contained egregious error because it failed to allege an essential element of the offense charged, that is, the two prior convictions for which Bates was required to register as a sex offender.

Bates admits that he did not object at trial to the issues in the charge. As such, we review the charge for egregious error. When reviewing alleged charge error, we

7

determine whether error existed in the charge and, if so, whether sufficient harm resulted from the error to compel reversal. *Ngo v. State*, 175 S.W.3d 738, 744 (Tex. Crim. App. 2005); *see also Phillips v. State*, 463 S.W.3d 59, 64-65 (Tex. Crim. App. 2015).

When, as here, the defendant does not object to the alleged charge error at trial, we may reverse the judgment only if the error was so egregious that the defendant did not receive a fair and impartial trial. *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g); *see also Herron v. State*, 86 S.W.3d 621, 632 (Tex. Crim. App. 2002). Errors that result in egregious harm are those that affect the "'very basis of the case,' deprive the defendant of a 'valuable right,' or 'vitally affect a defensive theory.'" *Hutch v. State*, 922 S.W.2d 166, 171 (Tex. Crim. App. 1996), *overruled on other grounds by Gelinas v. State*, 398 S.W.3d 703 (Tex. Crim. App. 2013). "Egregious harm is a difficult standard to prove[,] and such a determination must be done on a case-by-case basis." *Id*. The egregious harm inquiry under *Almanza* is fact specific and "should be done on a case-by-case basis." *Gelinas*, 398 S.W.3d at 710. "[T]he record must show that a defendant has suffered actual, rather than merely theoretical, harm from jury instruction error." *Ngo*, 175 S.W.3d at 750.

In assessing the degree of harm, we must consider the entire jury charge, the state of the evidence, including contested issues and the weight of probative

8

evidence, the argument of counsel, and any other relevant information revealed by the record. *Almanza,* 686 S.W.2d at 171; *see also Villarreal v. State*, 453 S.W.3d 429, 433 (Tex. Crim. App. 2015); *Allen v. State*, 253 S.W.3d 260, 264 (Tex. Crim. App. 2008). We must examine the charge in its entirety rather than as a series of isolated statements. *Holley v. State*, 766 S.W.2d 254, 256 (Tex. Crim. App. 1989); *Iniguez v. State*, 835 S.W.2d 167, 170 (Tex. App.—Houston [1st Dist.] 1992, pet. ref'd).

In his first issue, Bates argues that the jury charge contained egregious error because the State was required to demonstrate a culpable mental state, that he knowingly entered a school premises in violation of sex offender registration. The Texas Court of Criminal Appeals addressed this issue and stated that "intent does not apply. We hold that…the culpable mental states of knowledge and recklessness apply only to the duty-to-register element of Article 62.012's failure-to-comply offense." *Robinson v. State*, 466 S.W.3d 166, 172 (Tex. Crim. App. 2015); *see also Ruiz v. State*, Nos. 12-19-00023-CR, 12-19-00024-CR, 12-19-0025-CR; 2020 WL 562974, *1 (Tex. App.—Tyler Feb. 5, 2020, no pet.) (mem. op.) ("The culpable mental state for failure to comply with sex offender registration requirements applies to the duty to register, not the failure to comply. Accordingly, the evidence must establish a defendant's awareness of the registration requirements but need not establish an additional culpable mental state regarding his failure to register.").

9

In this case, Officer Hyde testified and provided evidence that she explained and went over each of the rules with Bates and had him sign next to each rule and provide a thumb print less than thirty (30) days before this incident. A culpable mental state for failure to comply with the requirements of his registered status is not required to be included within the jury instructions. Thus, Bates has failed to show any error in the jury charge for omitting any requirement to find that Bates knowingly entered a school premises in violation of his sex offender registration requirements.

The charge contained the following language,

Now, bearing in mind the foregoing instructions, if you find from the evidence beyond a reasonable doubt that on or about April 26, 2019 in Montgomery County, Texas, that the defendant, James Ray Bates, did then and there knowing the defendant was required to register pursuant to Chapter 62 of the Texas Code of Criminal Procedure, Sex Offender Registration Program, fail to comply with a requirement of Chapter 62 of the Texas Code of Criminal Procedure, to wit: the defendant entered the premises of Sacred Heart Catholic School during the school's standard operating hours and did not immediately notify the school's administrative office of the defendant's presence at the school, and the defendant's duty to register expires when the defendant dies, and the defendant is required to verify his registration once each 90-day period under Article 62.058, Texas Code of Criminal Procedure, then you will find the defendant guilty of Failure to Comply with Sexual Offender Registration Requirements as charged in the indictment.

The application paragraph of the charge correctly instructed the jury that they must believe beyond a reasonable doubt that Bates "did then and there knowing the defendant was required to register pursuant to Chapter 62 of the Texas Code of

10

Criminal Procedure, Sex Offender Registration Program, fail to comply with a requirement of Chapter 62 of the Texas Code of Criminal Procedure . . . then you will find the defendant guilty of Failure to Comply with Sexual Offender Registration Requirements as charged in the indictment." "Where the application paragraph correctly instructs the jury, an error in the abstract instruction is not egregious." *Medina v. State*, 7 S.W.3d 633, 640 (Tex. Crim. App. 1999); *see also Robinson*, 466 S.W.3d at 172. Accordingly, we determine no error resulting in egregious harm has been shown and Bates's first issue is overruled.

Next, Bates argues that the charge failed to include an essential element of the offense, that is, the two prior convictions which resulted in requiring him to register as a sex offender. The indictment read as follows:

> James Ray Bates, on or about April 26, 2019, and before the presentment of this indictment, in the County and State aforesaid, did then and there, knowing the defendant was required to register pursuant to Chapter 62 of the Texas Code of Criminal Procedure, Sex Offender Registration Program, fail to comply with a requirement of Chapter 62 of the Texas Code of Criminal Procedure, to wit: the defendant entered the premises of Sacred Heart Catholic School during the school's standard operating hours and did not immediately notify the school's administrative office of the defendant's presence at the school,

> And it is further presented that the defendant is a person whose duty to register expires when the person dies and that the defendant is required to verify his registration once each 90-day period under Article 62.058, Texas Code of Criminal Procedure.

> The indictment also alleged two prior felony enhancements.

11

Bates was charged under Chapter 62 of the Code of Criminal Procedure requiring him to comply with Chapter 62 per his registration as a sex offender. The State argues that it introduced evidence of Bates's convictions in its first exhibit, though not through certified judgments. The Court of Criminal Appeals addressed this issue in 2007 and stated that a certified document is not necessary to prove a defendant has previously been convicted.

> To establish that a defendant has been convicted of a prior offense, the State must prove beyond a reasonable doubt that (1) a prior conviction exists, and (2) the defendant is linked to that conviction. No specific document or mode of proof is required to prove these two elements. There is no "best evidence" rule in Texas that requires that the fact of a prior conviction be proven with any document, much less any specific document. While evidence of a certified copy of a final judgment and sentence may be a preferred and convenient means, the State may prove both of these elements in a number of different ways, including (1) the defendant's [a]dmission or stipulation, (2) testimony by a person who was present when the person was convicted of the specified crime and can identify the defendant as that person, or (3) documentary proof (such as a judgment) that contains sufficient information to establish both the existence of a prior conviction and the defendant's identity as the person convicted. Just as there is more than one way to skin a cat, there is more than one way to prove a prior conviction.

*Flowers v. State*, 220 S.W.3d 919, 921-22 (Tex. Crim. App. 2007) (citations omitted).

Additionally, even assuming without deciding it was jury charge error not to include the two prior convictions as an essential element of the offense charged, Bates stipulated at trial that he was a registered sex offender. Therefore, any such error would not have been harmful. *See Hollen v. State*, 117 S.W.3d 798, 802 (Tex.

Crim. App. 2003) ("Since the two prior offenses were validly mentioned in the indictment and validly introduced into evidence via the stipulation, there was likewise no error in the jury instructions, and the prior convictions were the legitimate subject of voir dire, opening statements, and closing arguments."); *see also Tapps v. State,* 257 S.W.3d 438, 447 (Tex. App.—Austin 2008, aff'd 294 S.W.3d 175 (Tex. Crim. App. 2009)) (citation omitted) (Describing egregious error in an unobjected jury charge case. "Egregious error goes to the very basis of the case, deprives the accused of a valuable right, or vitally affects his defensive theory. The error must deprive the defendant of a fair and impartial trial. A party waives error in the admission of evidence by failing to object at the time evidence is offered. Even properly preserved error can be waived by failing to object when other similar evidence is offered."). As such, we overrule his second issue.

### Issues Three and Four

Finally, in his third and fourth issues, Bates challenges the sufficiency of the evidence that a jury could reasonably conclude that he was previously convicted of two sexually violent offenses, and that he knowingly entered the premises of a school and did not immediately notify the school of his presence as required by the sex offender registration requirements.

We review the sufficiency of the evidence to support a conviction under the standard set forth in *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). *See Brooks v.*

*State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010). Under that standard, we view all of the evidence in the light most favorable to the verdict and determine, based on that evidence and any reasonable inferences therefrom, whether any rational factfinder could have found the essential elements of the offense beyond a reasonable doubt. *Temple v. State*, 390 S.W.3d 341, 360 (Tex. Crim. App. 2013) (citing *Jackson*, 443 U.S. at 318–19). The jury is the sole judge of the credibility and weight to be attached to the testimony of the witnesses. *Id*. In this role, the jury may choose to believe all, some, or none of the testimony presented by the parties. *Chambers v. State*, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991). Further, the jury is permitted to draw multiple reasonable inferences from facts as long as each is supported by the evidence presented at trial. *Temple*, 390 S.W.3d at 360. When the record supports conflicting inferences, we presume that the jury resolved those conflicts in favor of the verdict and therefore defer to that determination. *Id*.

In reviewing the sufficiency of the evidence, we consider all of the evidence in the record, regardless of whether it was properly admitted. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). Direct and circumstantial evidence are equally probative of an actor's guilt, and "'circumstantial evidence alone can be sufficient to establish guilt.'" *Temple*, 390 S.W.3d at 359 (quoting *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007)). In a circumstantial evidence case, each fact need not point directly and independently to the guilt of the defendant so long

14

as the combined and cumulative force of all the incriminating circumstances warrants the conclusion that the defendant is guilty. *Id*. at 359-60 (quoting *Johnson v. State*, 871 S.W.2d 183, 186 (Tex. Crim. App. 1993)); *Hooper*, 214 S.W.3d at 13. "After giving proper deference to the factfinder's role, we will uphold the verdict unless a rational factfinder must have had reasonable doubt as to any essential element." *Laster v. State*, 275 S.W.3d 512, 518 (Tex. Crim. App. 2009).

In his third issue, Bates challenges the sufficiency of the evidence demonstrating his two prior convictions requiring him to register as a sex offender. The elements of the offense of failure to register as a sex offender are: (a) the person is required to register as a sex offender, and (b) he or she fails to comply with any requirement of Chapter 62 of the Code of Criminal Procedure. *See* Tex. Code Crim. Proc. Ann. art. 62.102(a); *Crabtree v. State*, 389 S.W.3d 820, 825 (Tex. Crim. App. 2012). A person is required to register as a sex offender if he has a "reportable conviction or adjudication[.]" Tex. Code Crim. Proc. Ann. art. 62.051(a). Article 62.001(5) defines "[r]eportable conviction or adjudication" as a conviction or adjudication for certain specifically identified sex offenses or offenses containing a sexual component. *Id.* art. 62.001(5).

> Legal sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge. The hypothetically correct jury charge sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried. Here,

15

the hypothetically correct jury charge required proof that [the defendant] (1) had a reportable conviction or adjudication, (2) was required to register, (3) failed to comply with that requirement, and that (4) his duty to register had not expired.

*Hall v. State*, 440 S.W.3d 690, 691 (Tex. App.—Texarkana 2013, pet. ref'd) (citations and quotations omitted).

Bates disputes whether the State provided evidence of a reportable conviction or adjudication for which he must register. *Id*; *see also Crabtree*, 389 S.W.3d at 824-25. As we stated previously, the State admitted evidence of two prior convictions of Bates through the testimony of Officer Hyde and sex offender registration forms signed by Bates before this incident. Additionally, the State offered evidence of his prior convictions by way of Bates's prerelease notification form for the Texas Sex Offender Registration Program, and Bates stipulated that he had a duty to register as a sex offender.

> [THE STATE]: The State and the Defense have agreed that the Defendant is a person who has a duty to register as a sex offender, that his duty to register expires when he dies, and that the Defendant is required to verify his registration once each 90-day period under Article 62.058 of Texas Code of Criminal Procedure.
>
> [DEFENSE COUNSEL]: No objections, Judge.
>
> [THE TRIAL COURT]: Thank you. That is accepted.

On this record, we hold a jury could reasonably conclude that Bates was a sex offender required to register under the statute. We overrule his third issue.

16

Finally, in his last issue, Bates challenges the sufficiency of the evidence demonstrating that he knowingly entered a school premises in violation of his sex offender registration regulations. As we previously discussed, the burden on the State is to demonstrate that he had a duty as a registered sex offender to comply with the terms of his sex offender status, among them not entering a school premises unless the offender immediately notifies school personnel of his status. The culpable mental state for failure to comply with sex offender registration requirements applies only to the duty to register, not the failure to comply with the requirements of sex offender registration afterwards. *Robinson*, 466 S.W.3d at 172. A person commits an offense if he is required to register and fails to comply with any requirement of Chapter 62. Tex. Code Crim. Proc. Ann. art. 62.102(a).

First, as we noted before, Bates stipulated that he was a sex offender and had a duty to register. Additionally, there was testimony from Officer Hyde that on April 3, 2019, Bates signed a Texas Sex Offender Registration Program form wherein he acknowledged a requirement that Bates not enter school premises without immediately notifying school administration of his presence and registration status. Multiple witnesses testified that the school shared the parking lot with the church during regular school hours, the school and church were considered one entity, and at the time of the confrontation between Erickson and Bates, students were present and walking toward the chapel through or adjacent to the parking lot. Evidence also

demonstrated that Bates had to cross through a line of students to get to Erickson's truck. Photographs were admitted showing parking spots reserved for parents of students of the school in the parking lot, the visibility of the school signs and school zone lights, and testimony from Erickson that parents regularly use the parking lot to enter the school.

Viewing the evidence in the light most favorable to the verdict and deferring to the jury's authority to decide the credibility of witnesses and the weight to give their testimony, we conclude that a reasonable factfinder could have found, beyond a reasonable doubt, that Bates entered a school premises in violation of his sex offender registration. We overrule Bates's final issue.

## Conclusion

After overruling all of Bates's issues on appeal, we affirm the judgment of the trial court.

AFFIRMED.

_____
CHARLES KREGER
Justice

Submitted on July 5, 2022
Opinion Delivered November 30, 2022
Do Not Publish

Before Golemon, C.J., Kreger and Horton, JJ.

18