

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-11-00059-CR

_____


JUSTIN LAROY FAGAN, Appellant

V.

THE STATE OF TEXAS, Appellee



On Appeal from the 188th Judicial District Court
Gregg County, Texas
Trial Court No. 40,050-A



Before Morriss, C.J., Carter and Moseley, JJ.
Opinion by Justice Carter

OPINION

A jury convicted Justin Laroy Fagan of one count of unlawful possession of a firearm by a felon, for which he was sentenced to ten years' imprisonment, and one count of aggravated assault with a deadly weapon, which resulted in a twenty-year sentence of imprisonment. Fagan appeals both convictions on the ground that the evidence was legally insufficient to support them. We find the evidence legally sufficient to support the aggravated assault with a deadly weapon conviction and therefore affirm that conviction. Because the evidence is legally insufficient to show that Fagan unlawfully possessed a firearm before the fifth anniversary of his release from confinement following a previous felony conviction, we reverse the trial court's judgment of conviction on this charge and render a judgment of acquittal.

## I.      Standard of Review

In reviewing the legal sufficiency of the evidence, we review all the evidence in the light most favorable to the jury's verdict to determine whether any rational jury could have found the essential elements of the offense beyond a reasonable doubt. *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (4–1–4 decision) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)); *Hartsfield v. State*, 305 S.W.3d 859, 863 (Tex. App.—Texarkana 2010, pet. ref'd) (citing *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007)). Our rigorous legal sufficiency review focuses on the quality of the evidence presented. *Brooks*, 323 S.W.3d at 917–18 (Cochran, J., concurring). We examine legal sufficiency under the direction of the *Brooks*

2

opinion, while giving deference to the responsibility of the jury "to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson*, 443 U.S. at 318–19).

Legal sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). The hypothetically correct jury charge "sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id.*

## II. Factual Background

Erica Allison had a fourteen-year relationship with Fagan. On the day of the incident, Erica and her sister, Nashendra Allison, drove by Fagan's mother's home. Nashendra testified that Fagan "was standing up in the front door with a gun," saw them drive by, and began to follow them "real fast" in his "blue Caprice." Nashendra became scared and called 9-1-1. She testified that Erica pulled into a driveway to escape, at which point Fagan "pulled the gun out[,] shot three times," and then drove off. Nashendra testified that Erica was frightened. She heard that "[Fagan] and Erica had got into it at a club."

Williard Eugene Durham was washing dishes in his kitchen when he heard the gunshots.

3

He looked out a window and saw that Erica had parked "a white car with two occupants, two ladies," in the driveway, while a "blue-type metallic" car drove by. Officer Robert Bryan arrived at Durham's residence and was greeted by the "upset, frantic" and "distraught" Erica and Nashendra.

That evening, Officer Jimmy Shannon Purdon received a telephone call from Erica, who claimed "she had been shot at earlier in the day by Justin Fagan and she needed to give me some information about an incident that occurred the night before." Erica told Purdon that Fagan had threatened her life outside the club.

## III. Legally Sufficient Evidence Supported Aggravated Assault with a Deadly Weapon Conviction

The indictment alleged that Fagan "then and there intentionally or knowingly threaten[ed] [Erica], with imminent bodily injury by shooting a firearm in the direction of [Erica] Allison, and did then and there use or exhibit a deadly weapon, to wit: a firearm, during the commission of said assault." Fagan committed the offense of aggravated assault if he intentionally or knowingly threatened Erica with imminent bodily injury and used or exhibited a deadly weapon during the threat. TEX. PENAL CODE ANN. §§ 22.01(a)(2), 22.02(a)(2) (West 2011). A deadly weapon is anything that in the manner of its use or intended use, is capable of causing death or serious bodily injury. TEX. PENAL CODE ANN. § 1.07(a)(17)(B) (West Supp. 2011).

Erica was a hostile witness for the State. She consistently responded that she was unaware that she had been followed, did not know why she had pulled into Durham's driveway, heard no

gunshots, and did not know why her sister had called 9-1-1. As a result, Fagan complains that "[t]here is no direct or circumstantial evidence in the record that Erica Allison felt threatened by Justin Laroy Fagan shooting a firearm in her direction."

The gist of an assault offense is that the defendant "acts with intent to cause a reasonable apprehension of imminent bodily injury." *Dobbins v. State*, 228 S.W.3d 761, 766 (Tex. App.—Houston [14th Dist.] 2007, pet. dism'd) (citing *Garrett v. State*, 619 S.W.2d 172, 174 (Tex. Crim. App. 1981)). Thus, we look at the "acts and culpability of the defendant's behavior, that is, whether the defendant intended to cause or knowingly 'caused in the victim a reasonable apprehension of imminent bodily injury.'" *In re S.B.*, 117 S.W.3d 443, 450 (Tex. App.—Fort Worth 2003, no pet.) (quoting *Edwards v. State*, 57 S.W.3d 677, 680 (Tex. App.—Beaumont 2001, pet. ref'd)); *see Tidwell v. State*, 187 S.W.3d 771, 774 (Tex. App.—Texarkana 2006, pet. struck). The statute does not require actual perception of the threat by the victim. TEX. PENAL CODE ANN. § 22.01(a)(2). Further, the question of whether a victim of assault by threat must perceive the threat has been left open by the Texas Court of Criminal Appeals. *See Olivas v. State*, 203 S.W.3d 341, 349 (Tex. Crim. App. 2006). The court observed, however, that a perception of "some threat of imminent bodily injury," coupled with the use of a deadly weapon, supports a conviction for aggravated assault. *Id.* at 350; *Dobbins*, 228 S.W.3d at 766.

The record shows that Erica was fearful and that her apprehension was reasonable. Fagan threatened Erica's life on the night before the incident. Nashendra testified that Erica was afraid

5

of Fagan and that Erica's nonresponsiveness to the State's questioning was due to her fear. Nashendra believed that Erica was scared when the gunshots were fired. The jury heard the 9-1-1 call made by a screaming, barely comprehensible Nashendra informing the 9-1-1 operator that Fagan had fired shots at Erica's car. Erica's screaming voice is heard exclaiming, "He shot a gun at us!" Erica was described by the responding officer as "upset, frantic" and "distraught."

The act of pointing a loaded gun at an individual is, by itself, threatening conduct which supports a conviction for aggravated assault. *Nemecek v. State*, 621 S.W.2d 404 (Tex. Crim. App. [Panel Op.] 1980), *overruled on other grounds*, 651 S.W.2d 746 (Tex. Crim. App. 1983); *Cantu v. State*, 953 S.W.2d 772, 775 (Tex. App.—Corpus Christi 1997, pet. ref'd); *Preston v. State*, 675 S.W.2d 598, 601 (Tex. App.—Dallas 1984, pet. ref'd). Coupled with Fagan's threats to Erica's life, the jury was free to determine that Fagan intentionally or knowingly threatened Erica with imminent bodily injury while exhibiting a firearm.

## IV. Evidence Was Insufficient to Support Unlawful Possession of a Firearm Conviction

A person who has been convicted of a felony commits an offense if he or she possesses a firearm:

> (1) after conviction and before the fifth anniversary of the person's release from confinement following conviction of the felony or the person's release from supervision under community supervision, parole, or mandatory supervision, whichever date is later; or

> (2) after the period described by Subdivision (1), at any location other than the premises at which the person lives.

6

TEX. PENAL CODE ANN. § 46.04(a) (West 2011). Fagan complains, "[T]here is no evidence in the record as to when Justin Laroy Fagan was released from confinement or supervision for his prior felony conviction in 2004." He is correct.

The State responds with an argument that the "statute does not require proof of the date of release unless the defendant possessed a firearm at his home."[1] In other words, the State argues that the conviction should stand because it could prove subsection (a)(2) of Section 46.04. However, the indictment specified that it was relying on Section 46.04(a)(1) only. The law as authorized by the indictment consists of "the statutory elements of the offense . . . as modified by the charging instrument." *Clinton v. State*, 354 S.W.3d 795, 799 (Tex. Crim. App. 2011) (quoting *Curry v. State*, 30 S.W.3d 394, 404 (Tex. Crim. App. 2000); *see Macias*, 136 S.W.3d at 706. "[W]hen the statute defines alternative methods of manner and means of committing an element and the indictment alleges only one of those methods, 'the law' for purposes of the hypothetically correct charge[] is the single method alleged in the indictment." *Clinton*, 354 S.W.3d at 799 (citing *Gollihar v. State*, 46 S.W.3d 243, 254 (Tex. Crim. App. 2001)). We have previously found Section 46.04 to contain "two ways by which a person . . . can be held criminally responsible for unlawfully possessing a firearm." *Macias*, 136 S.W.3d at 706. Therefore, our review is

---

[1]The State cites to *Nguyen v. State*, 54 S.W.3d 49 (Tex. App.—Texarkana 2001, pet. ref'd). While we find no fault with the logic of *Nguyen*, the Texas Court of Criminal Appeals has now made it clear that when the State pleads one specific element that contains alternatives for that element, the sufficiency of the evidence is measured by the element that was actually pled, not any other statutory alternative element. *Cada v. State*, 334 S.W.3d 766, 774 & n.36 (Tex. Crim. App. 2011) (citing *Macias v. State*, 136 S.W.3d 702, 705–06 (Tex. App.—Texarkana 2004, no pet.)). To the extent *Nguyen* conflicts with our ruling here, it is overruled.

7

confined to the determination of whether the State presented legally sufficient evidence to sustain a conviction under subsection (a)(1) of Section 46.04.

First, we note that Section 46.04 does not "necessarily require proof of the date of release from confinement in all cases." *Tapps v. State*, 257 S.W.3d 438, 445 (Tex. App.—Austin 2008), *aff'd on other grounds*, 294 S.W.3d 175 (Tex. Crim. App. 2009). As explained by our sister court:

> Under section 46.04, the period during which firearm possession by a felon is forbidden begins on the date of conviction (the date one is "convicted of a felony") and ends on the fifth anniversary of the person's release from confinement or the person's release from any form of supervision or parole, whichever date is later. Thus, the minimum period that a felon will be prohibited from possessing a firearm—assuming the felon is released from confinement or supervision on the date of conviction or is never confined-is five years from the date of conviction. The date of release from confinement is necessary to determine the maximum length of this period specifically when the period extends beyond five years from the date of conviction. The date of release from confinement is not necessary when the alleged possession occurs within five years of the date of conviction because the period of prohibition extends for this duration in any event.

*Id.* (citations omitted). In this case, Fagan's offense occurred outside of the minimum period of confinement described above. Therefore, it was necessary for the State to prove the date of release from confinement or supervision. *See id.*; *see also Wright v. State*, Nos. 05-08-00778-CR, 05-08-00779-CR, 05-08-00780-CR, 2009 WL 1887127, at **8–9 (Tex. App.—Dallas July 2, 2009, pet. ref'd) (mem. op., not designated for publication); *McClure v. State*, No. 12-05-00209-CR, 2006 WL 1791628, at *4 (Tex. App.—Tyler June 30, 2006, no pet.) (mem. op.,

8

not designated for publication).[2]

Here, the State introduced a judgment convicting Fagan of burglary of a habitation on October 28, 2004. He received a four-year sentence for this offense, with 238 days of time credited. The offense in this case occurred on or about August 7, 2010. It was entirely possible that Fagan could have been released from confinement, parole, or supervision prior to August 7, 2005, whether through pardon, clemency, or otherwise. A conclusion reached otherwise would be based upon speculation.

Because the State failed to provide evidence showing Fagan's date of release from confinement or supervision, we conclude the evidence was legally insufficient to support his conviction for unlawful possession of a firearm by a felon, as alleged in the indictment. Fagan's point of error with respect to this conviction is sustained.

## V.    Conclusion

We affirm the trial court's judgment of aggravated assault, but reverse and render a judgment of acquittal for the offense of unlawful possession of a firearm by a felon.

Jack Carter
Justice

Date Submitted:     February 17, 2012
Date Decided:       February 21, 2012

---

[2]Although these unpublished cases have no precedential value, we may take guidance from them "as an aid in developing reasoning that may be employed." *Carrillo v. State*, 98 S.W.3d 789, 794 (Tex. App. —Amarillo 2003, pet. ref'd).

Publish