ACCEPTED
03-14-00673-CR
4456770
THIRD COURT OF APPEALS
AUSTIN, TEXAS
3/11/2015 1:11:56 PM
JEFFREY D. KYLE
CLERK

# IN THE THIRD COURT OF APPEALS

## AT AUSTIN, TEXAS

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS

3/11/2015 1:11:56 PM

JEFFREY D. KYLE
Clerk

| | | |
|---|---|---|
| **CHRISTOPHER ANTHONY GEORGE,** | § | |
| **APPELLANT** | § | |
| | § | |
| | § | **CAUSE NO. 03-14-00673-CR** |
| **V.** | § | **TRIAL COURT NO. 72,519** |
| | § | |
| **THE STATE OF TEXAS,** | § | |
| **APPELLEE** | § | |

---

## BRIEF OF APPELLANT

---

**Appealed from the 264th Judicial District Court, Bell County, Texas
Hon. Martha J. Trudo, presiding**

---

COPELAND LAW FIRM
P.O. Box 399
Cedar Park, TX 78613
Tel/Fax 512.215.8114
e-mail: **ecopeland63@yahoo.com**

Erika Copeland
State Bar No. 16075250
Attorney for Appellant

**APPELLANT HEREBY WAIVES ORAL ARGUMENT**

# TABLE OF CONTENTS

**Page**

**Table of Contents**     *i*

**Index of Authorities**     *ii,iii*

**Identity of Parties and Counsel**     1

**Statement of the Case**     2

**Issue Presented**     3

The evidence is legally insufficient to support George's conviction because the State did not prove the actual date of his release from confinement resulting from his 2009 conviction for robbery.

**Statement of Facts/Background**     4

**Summary of the Argument**     9

**Issue One**     9

**Statement of Pertinent Evidence**     9

**Argument**     10

**Prayer**     16

**Certificate of Service and Compliance with Rule 9**     17

# INDEX OF AUTHORITIES

**Authorities**                                                                          **Page**

## United States Supreme Court cases

*Jackson v. Virginia*                                                                      **11**
    443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)

## Texas Court of Criminal Appeals cases

*Cada v. State*                                                                            **11,16**
    *334 S.W.3d 776 (Tex. Crim. App. 2011)*

*Geick v. State*                                                                           **11**
    349 S.W.3d 542 (Tex. Crim. App. 2011)

*Hooper v. State*                                                                          **15**
    214 S.W.3d 9 (Tex. Crim. App. 2007)

*Isassi v. State*                                                                          **11**
    330 S.W.3d 633 (Tex. Crim. App. 2010)

*Malik v. State*                                                                           **11**
    953 S.W.2d 234 (Tex. Crim. App. 1997)

## Texas Court of Appeal cases

*Fagan v. State*                                                                           **9,13,16**
    362 S.W.3d 796 (Tex. App. – Texarkana 2012, *pet. ref'd*)

*Nguyen v. State*                                                                          **11**
    54 S.W.3d 49 (Tex. App. – Texarkana 2001, *pet. ref'd*)

*Saldana v. State*                                                                         **15,16**
    418 S.W.3d 722 (Tex. App. – Amarillo 2013)

# INDEX OF AUTHORITIES, continued

**Authorities**                                                    **Page**

**Statutes**

**TEX. PENAL CODE §46.04 (West 2011)**                              **2**

**TEX. PENAL CODE §1.07(A)(39) (West 2011)**                        **12**

**TEX. PENAL CODE §46.04(a)(1) (West 2011)**                        **12**

# IN THE THIRD COURT OF APPEALS
# AT AUSTIN, TEXAS

| | | |
|---|---|---|
| **CHRISTOPHER ANTHONY** | § | |
| **GEORGE,** | § | |
| **APPELLANT** | § | |
| | § | **CAUSE NO. 03-14-00673-CR** |
| **V.** | § | **TRIAL COURT NO. 72,519** |
| | § | |
| **THE STATE OF TEXAS,** | § | |
| **APPELLEE** | § | |

## IDENTITY OF PARTIES AND COUNSEL

**TO THE HONORABLE COURT OF APPEALS:**

**NOW COMES** Christopher Anthony George, appellant, who would show the Court interested parties herein are as follows:

**CHRISTOPHER ANTHONY GEORGE**, appellant.

**ERIKA COPELAND**, appellate attorney for appellant, P.O. Box 399, Cedar Park, Texas 78613.

**STEVE STRIEGLER**, trial attorney for appellant, P.O. Box 1683, Belton, Texas 76513.

**MICHAEL WALDMAR** and **BOB ODOM**, Assistant Bell County District Attorneys, trial and appellate attorneys, respectively, for the State of Texas, appellee, P.O. Box 540, Belton, Texas 76513.

*Christopher Anthony George v. The State of Texas*
Cause No. 03-14-00673-CR
**Brief of Appellant**      1

## IN THE THIRD COURT OF APPEALS
## AT AUSTIN, TEXAS

| | | |
|---|---|---|
| CHRISTOPHER ANTHONY | § | |
| GEORGE, | § | |
| APPELLANT | § | |
| | § | CAUSE NO. 03-14-00673-CR |
| V. | § | TRIAL COURT NO. 72,519 |
| | § | |
| THE STATE OF TEXAS, | § | |
| APPELLEE | § | |

## STATEMENT OF THE CASE

**TO THE HONORABLE COURT OF APPEALS**:

Christopher Anthony George was convicted by jury of unlawful possession of a firearm by a felon. *See* **TEX. PENAL CODE §46.04 (West 2011)** and (R.R. 7, p. 94). Included in his indictment was an enhancement paragraph referencing George's prior conviction for burglary of a habitation. (C.R. 1, p. 5). After the jury found him guilty of the charged offense, George pleaded "true" to the enhancement paragraph. (R.R. 7, p. 95). The trial court subsequently reviewed a pre-sentence investigative report, heard evidence and argument of counsel, and assessed his punishment at confinement in the Texas Department of Criminal Justice's Institutional Division for eighteen (18) years. (R.R. 8, p. 11). George gave due notice of appeal from the verdict and sentence. (C.R. 1, p. 67).

# ISSUE PRESENTED

The evidence is legally insufficient to support George's conviction because the State did not prove the actual date of his release from confinement resulting from his 2009 conviction for robbery.

# IN THE THIRD COURT OF APPEALS
## AT AUSTIN, TEXAS

CHRISTOPHER ANTHONY §
GEORGE, §
　　　　APPELLANT §
　　　　　　　　　　　　　§　　CAUSE NO. 03-14-00673-CR
V. §　　TRIAL COURT NO. 72,519
　　　　　　　　　　　　　§
THE STATE OF TEXAS, §
　　　　APPELLEE §

## STATEMENT OF FACTS/BACKGROUND

Gerald McKinley testified that on the night of February 10, 2014, he was in his daughter's bedroom at 3905 London Lane in Killeen, when he saw a car backing past his house down the street. Moments later he saw someone fire two shots from the car into a house located across the street and three houses down from his own. (R.R. 6, pp. 27-33). He said that after the shots were fired, the car sped past his house toward the intersection at the end of his street. (R.R. 6, p. 33). McKinley said he saw a black male driving the car as it sped past, and he ran out his door to follow. (R.R. 6, pp. 33-34). He testified that he ran after the car and kept it in his sights until it was stopped by police at the end of his block. He said that no one no one exited the car before he reached the end of his street where he met the policeman who had the car stopped.  McKinley said that he told the officer

who had stopped the car that the car's driver had fired shots into his neighbor's house. The policeman drew his gun and told him to return to his home. Later, McKinley said, he provided a written statement to another officer who came to his house. (R.R. 6, p. 36).

Killeen police officer Marvin Padgett testified that he was on routine patrol approaching the intersection of 60th and London Lane when he observed a car run the stop-sign at the intersection. He activated his patrol car's overhead lights, and the car immediately stopped. (R.R. 6, p. 46). Padgett saw the driver partially open his door and make "movements" under his seat. (R.R. 6, p. 46-47). Padgett said that he instructed the car's driver to close his door; he approached the car and identified the driver as George. (R.R. 6, p. 49). When he returned to his patrol car to run George's license, Padgett testified that various people ran up to his patrol car to report that the person he had stopped had just fired shots into a house on Landon Lane. (R.R. 6, p. 49). Padgett took out his gun to wait for back-up which arrived moments later. (R.R. 6, p. 49). When Officer Kellye McDermott arrived, Padgett ordered George out of his car and onto the ground. He patted George down, but George denied that he had a weapon. (R.R. 6, p. 51). After he felt that the situation was under control, Padgett looked in George's car. He saw a spent shell casing on the driver's side floorboard. (R.R. 6, p.

51). Padgett searched the car but could not find a weapon. (R.R. 6, p. 52). Padgett said that George volunteered during his pat-down that he was on parole and that he couldn't have a gun. (R.R. 6, p.51). By now, Padgett said, George's driver license check had come back showing his license was invalid, so Padgett arrested George for driving while his license was suspended. Padgett said that George asked several times if his wife could come and get their car, but Padgett told him the car would be impounded. (R.R. 6, pp. 53-54). In the meantime, Officer Pergrande, whom Padgett had sent to check on the house where the shooting had occurred, radioed back that he had found bullet holes as well as shell fragments in the targeted home at 3808 London Lane. (R.R. 6, p. 54). Padgett testified that following George's booking back at police headquarters, he asked technicians at the Bell County Jail to perform gunshot residue tests on George. However, he said that he later learned that the Bell County testing kits were incompatible with the Austin Lab's testing equipment so the residue samples were never analyzed. (R.R. 6, p. 56). Padgett's COBAN video system from his patrol car was introduced into evidence. *See* State's Exhibit 4.

Kellye McDermott's testimony fairly mirrored that of Padgett's. She said she also searched George's car but found no gun, although she too observed the shell casing on the floorboard. (R.R. 6, p. 66). She testified

that when the towing company driver called later to report that he had found a loaded gun magazine in the car's front seat, she went to the tow company to retrieve the magazine. It contained .40 caliber ammunition. (R.R. 6, pp. 78-79).

Sam Dill, the tow truck operator, testified that he towed the impounded car to his company's lot. That night, he said, during his inventory of the car's contents as part of his company's business practice, he found a loaded gun magazine. (R.R. 6, pp. 88-89). The next day, Dill said, when he went to move the car to the impound section of his lot, he noticed a bulge between the seat cushions and springs on the driver's side front seat. On examining the bulge, Dill said that he discovered a .40 caliber handgun hidden in that location. He said he immediately called the police. (R.R. 6, p. 90).

Lanell Waley, a forensic scientist with the Texas Department of Public Safety, testified that she analyzed various pieces of evidence submitted by the Killeen police. She reported that she could not say if the bullet fragments recovered from the home that had been fired upon came from the gun recovered from George's car, but that they were consistent with that caliber bullet. (R.R. 6, p. 21). She also testified that her tests

confirmed that the shell casing found in the floorboard had, in fact, been fired from the gun recovered from George's car. (R.R. 6, pp. 20, 21, 25).

Tim Manges, an officer with the narcotics division of the Killeen Police Department, testified that he was working a case on the occupants of the house at 3808 Landon Lane when he learned that it had been fired upon. (R.R. 7, p. 28). Interested in the car that George had been driving, he drove to the impound yard to inspect it. When he got there, the tow driver showed him a gun in its hidden location, and Manges recovered the gun the subject of the offense. (R.R. 7, pp. 28-29). Manges testified that he had not been aware, before his trip to view the car that the tow driver had called another department in his office to report that he had found the gun in the car. (R.R. 7, pp. 39, 42). Manges also said that Christina Dawson, the focus of his investigation for illegal narcotics activity at the Londan Lane home which had been fired upon, was on the run and had not been seen since shortly after the shooting incident. Her boyfriend, who lived with her at the address at the time of the shooting, had been arrested and was in federal custody on un-related charges. (R.R. 7. P. 38). When he was recalled by the defendant, Manges testified that the gun recovered from George's car and the subject of the offense was never checked for latent fingerprints. (R.R. 7, p. 65).

George did not testify.

## SUMMARY OF THE ARGUMENT

Very clearly, the State proved that George had a previous conviction for robbery from 2009. However, the State did not produce evidence of the date of his release from confinement from that conviction. Neither did his prior judgment nor any other evidence adduced at trial prove beyond a reasonable doubt that he was released from supervision for the conviction under community supervision, parole, or mandatory supervision, within five years of the date of the anniversary of that conviction. *See Fagan v. State*, 362 S.W.3d 796, (Tex. App. – Texarkana 2012, *pet. ref'd*). Therefore the evidence was legally insufficient to support his conviction for unlawful possession of a firearm by a felon.

## ISSUE

The evidence is legally insufficient to support George's conviction because the State did not prove the actual date of his release from confinement resulting from his 2009 conviction for robbery.

## STATEMENT OF PERTINENT EVIDENCE

*Indictment*

George's indictment alleged in pertinent part that he did "on February 10, 2014, ... intentionally and knowingly possess a firearm before the fifth anniversary of (his) release from confinement or parole following conviction

of the felony offense of Robbery on January 29, 2009". The indictment's second paragraph alleged that he had previously been convicted of burglary of a habitation. (C.R. 1, p. 5).

*Trial Evidence*

The State's proof concerning George's prior conviction included a judgment showing that he was convicted of robbery on January 29, 2009. *See* State's Exhibit 1. The judgment reflects that his punishment was assessed at three (3) years confinement in the Texas Department of Criminal Justice's Institutional Division. Karl Ortiz, a Bell County District Attorney's Investigator and fingerprint expert, identified the judgment and analyzed fingerprint evidence which linked George to the judgment. (R.R. 6, pp 15 *et. seq.*) A pen pack for George was also used for fingerprint comparison and reference was made to George's picture contained in the pen pack. (R.R. l 6, p 26) and *see* State's Exhibit 2.

## ARGUMENT

*Standard of Review*

In an appellate court's due-process review of the sufficiency of the evidence to support a conviction, a reviewing court views all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a

reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). The essential elements of the crime are those defined by the hypothetically correct jury charge. *Geick v. State*, 349 S.W.3d 542, 545 (Tex. Crim. App. 2011) (citing *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)). A reviewing court, thus, measures the sufficiency of the evidence by the essential elements as defined by the hypothetically correct charge. *Cada v. State*, 334 S.W.3d 776, 773 (Tex. Crim. App. 2011). A hypothetically correct jury charge "accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Malik*, 953 S.W.2d at 240. [B]efore something may be an element of the offense in the hypothetically correct jury charge, it must be 'authorized by the indictment.'" *Cada*, 334 S.W.3d at 773 (footnotes omitted).

*Applicable Law*

"[T]o support a conviction for possession of a firearm, the State must show (1) that the accused exercised actual care, control, or custody of the firearm, (2) that he was conscious of his connection with it, and (3) that he possessed the firearm knowingly or intentionally." *Nguyen v. State*, 54

S.W.3d 49, 52 (Tex. App. – Texarkana 2001, *pet. ref'd*).   **TEX. PENAL CODE §1.07(A) (39) (West 2011)**

To prove unlawful possession of a firearm *by a felon*, the State is required to prove that the person (1) possessed a firearm (2) "after conviction and before the fifth anniversary of the person's release from confinement following conviction of the felony or the person's release from supervision under community supervision, parole, or mandatory supervision, whichever date is later." **TEX. PENAL CODE §46.04(a) (1) (West 2011)**.

Thus, here, to prove George committed the offense of felon in possession of a firearm, the State had to establish beyond a reasonable doubt that he had previously been convicted of a felony offense and possessed a firearm after the conviction and before the fifth anniversary of his release from confinement or community supervision, parole, or mandatory supervision, whichever was later.

*Analysis*

The State undoubtedly proved through the testimony of its fingerprint expert, Officer Karl Ortiz, and State's Exhibit 1 that George had been convicted of an offense in January, 2009. However, the State failed to prove any date of release from confinement of any kind from that conviction.

George's indictment alleged an offense date of February 10, 2014, which is more than five years after his date of conviction. In *Fagan v. State*, 362 S.W.3d 796, 8900 (Tex. App. – Texarkana 2012, *pet. ref'd*), the appellate court found that because the firearm offense occurred more than five years from *Fagan's* felony conviction, it was necessary for the State to prove the date of his release from confinement or supervision. Because the State had filed to do so, the court found the evidence insufficient to support his conviction for unlawful possession of a firearm, as alleged in the indictment. *Id*. at 801. As in *Fagan*, here George was in possession of a firearm when he was outside the "minimum period."[1]

In keeping with *Fagan* and her sister courts which have addressed the issue, the hypothetically correct jury charge in this case would (and here, did) obligate the State to prove that George was previously convicted of a felony offense and that he possessed a firearm after that conviction and before the fifth anniversary of his release from confinement. In this case, as noted above, the State's evidence in regard to his conviction and release from confinement consisted of a certified copy of a judgment showing George's conviction and a resulting three year jail sentence. Evidence

---

[1] The appellate court in *Fagan* referred to the five-year period following conviction as the "minimum period that a felon will be prohibited from possessing a firearm." 362 S.W.3d at 800.

adduced in trial showed his subsequent arrest in this case came over five years after that conviction. The judgment provided no evidence of the date of his release from confinement for the prior offense. The pen packet from his prior conviction was used to bolster other fingerprint evidence to support proof of that conviction. *See* State's Exhibit 2. That latter exhibit offered evidence of a release date only if the jury speculated on the meaning of certain language contained within the pen packet which was offered not for that purpose but only to bolster the State's identification of George.

In final argument, the State argued:

"But, was it before the fifth anniversary of his release from confinement or parole following conviction of a felony? Well, he was convicted in 2009. And what did he tell you right on videotape? I'm on parole. I wouldn't have a gun. You probably remember that. So if he says he was on parole, it's certainly within five years of him being discharged from parole. Even if you do the math, conviction in 2009 with three years in prison, and then get out, on parole five years after that, we're within the time frame any way you look at it. This is simply not an issue."

--(R.R. 7, p. 89).

The State's invitation in final argument for the jury to "do the math" was remarkably similar to the argument made in *Saldana v. State*, 418 S.W.3d 722 (Tex. App. – Amarillo 2013). In *Saldana*, the State's evidence included a certified copy of a judgment showing appellant's April 30, 2007 felony conviction, and the resulting two-year state jail sentence. Evidence showed he was arrested in possession of a firearm on September 19, 2012, some five years and five months after his felony conviction, but the 2007 judgment provided no evidence of the date appellant was released from confinement after the conviction. Neither did the record contain any other evidence of the date of his release. In finding the evidence insufficient to convict appellant of the charged offense, the appellate court noted that the prosecutor's invitation to "do the math" and infer the date of appellant's release from confinement from the date of the 2007 conviction, the length of sentence, and jail credit offered the jury an unworkable formula requiring surmise and speculation. *See Hooper v. State*, 214 S.W.3d 9, 16 (Tex. Crim. App. 2007) (conclusion based on speculation not sufficient based on facts or evidence to support a finding beyond reasonable doubt). Moreover, here the State's proof of a release date was not made any clearer from George's statement at his arrest that he could not possess a firearm because he was "on parole". That follows because his statement made no reference to the

particular robbery conviction alleged here as part of the State's indictment. In other words, his statement, standing alone, must also lead to jury speculation on whether he was referring at that moment to a supervision involving the particular conviction alleged here from which the five year "minimum period" had to be calculated to convict or, perhaps, from some other conviction not alleged. *See generally*, **Fagan**, 362 S.W.3d at 800, n.1, citing **Cada v. State**, 334 S.W.3d 766 (Tex. Crim. App. 2011) and *see* **Saldana**, 418 S.W.3d at 726.

*Conclusion*

The evidence in this case, even when viewed in the light most favorable to the verdict, is insufficient for a rational trier of fact to have found the essential elements of the crime beyond a reasonable doubt. Neither the evidence adduced nor the State's argument asking the jury to infer the missing evidence sufficiently supported the jury's verdict. In light of that the verdict and sentence must be reversed.

## PRAYER

**WHEREFORE**, Mr. George prays that this Court of Appeals reverse the judgment of the trial court and order an acquittal, or, in the alternative, enter such other orders as may be appropriate with its decision herein.

**COPELAND LAW FIRM**
P.O. Box 399
Cedar Park, TX  78613
Mobil/Test:  512.897.8126
Fax:  512.215.8114
e-mail:  ecopeland63@yahoo.com


By:    /s/      Erika Copeland
            Erika Copeland
            State Bar No. 16075250
            Attorney for Appellant


## CERTIFICATE OF SERVICE AND OF
## COMPLIANCE WITH RULE 9

This is to certify that on January 26, 2015, a true and correct copy of the above and foregoing document was served on Bob Odom, Assistant District Attorney of Bell County, P.O. Box 540, Belton, Texas 76513, in accordance with the Texas Rules of Appellate Procedure, and that the Brief of Appellant is in compliance with Rule 9 of the *Texas Rules of Appellate Procedure* and that portion which must be included under Rule 9.4(i)(1) contains 3315 words.


            /s/      Erika Copeland
            Erika Copeland