

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-21-00039-CR

DEMONDRE DESHAWN HOLINESS, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 8th District Court
Hopkins County, Texas
Trial Court No. 2027955

Before Morriss, C.J., Burgess and Stevens, JJ.
Memorandum Opinion by Justice Burgess

# MEMORANDUM OPINION

A Hopkins County jury convicted Demondre Deshawn Holiness of unlawful possession of a firearm by a felon and assessed a punishment of ten years' imprisonment. *See* TEX. PENAL CODE ANN. § 46.04 (Supp.). On appeal, Holiness argues that the evidence is legally insufficient to support the jury's verdict of guilt and that definitions in the trial court's jury charge constituted an impermissible comment on the weight of the evidence.[1] Because we find that legally sufficient evidence supported the jury's verdict and that there was no jury charge error, we affirm the trial court's judgment.

## I.    Factual Background

Police officers arrested Holiness after he engaged them in a high-speed chase in a vehicle stolen from David Trigiani. Troy Farmer, a private citizen, testified that the stolen vehicle pulled up in front of his house and that Holiness "jumped out, looked at [him], reached back in the car[,] . . . grabbed something . . . [, and] then proceeded to run" from peace officers. According to Farmer, Holiness was wearing a backpack as he fled.

Sean Hoffman, an officer with the Sulphur Springs Police Department, said that he had heard from other officers that "something was thrown" and "a gun [was] mentioned later on as [they] started searching." Thomas Colt Patterson, a deputy with the Hopkins County Sheriff's Office (HCSO), testified that other officers at the scene of Holiness's arrest asked him for help in locating a weapon "that might have been stashed or thrown into the wood line or taller grass" where the stolen vehicle was found. Patterson could not locate the gun.

---

[1] In companion cause numbers 06-21-00037-CR and 06-21-00038-CR, Holiness appeals his convictions for unauthorized use of a motor vehicle and evading arrest with a motor vehicle.

Jason Lavender, a deputy with the HCSO, testified that he found rifle ammunition and a box of .38 caliber pistol ammunition in the stolen BMW. Trigiani testified that no one in his family owned a gun and that he did not purchase any ammunition.

Kenneth Dean, a jail administrator for the HCSO, testified that the jail used a call recording system to record inmate calls. Holiness's jailhouse calls were admitted into evidence. On one recording, Holiness can be heard telling a friend, "[G]o get my gun, bro," and "[G]o get my pole." He can also be heard giving his friend directions to the gun's location between two particular bushes, stating that he does not want someone else to find it, and directing his friend to get the "pole" before it rains. Shea Shaw, an HCSO investigator, testified that the term "pole" is often used to refer to a gun.

## II. Legally Sufficient Evidence Supported the Jury's Verdict of Guilt

### A. Standard of Review

"In evaluating legal sufficiency, we review all the evidence in the light most favorable to the trial court's judgment to determine whether any rational jury could have found the essential elements of the offense beyond a reasonable doubt." *Williamson v. State*, 589 S.W.3d 292, 297 (Tex. App.—Texarkana 2019, pet. ref'd) (citing *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (plurality op.); *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Hartsfield v. State*, 305 S.W.3d 859, 863 (Tex. App.—Texarkana 2010, pet. ref'd)). "Our rigorous legal sufficiency review focuses on the quality of the evidence presented." *Id.* (citing *Brooks*, 323 S.W.3d at 917–18 (Cochran, J., concurring)). "We examine legal sufficiency under the direction of the *Brooks* opinion, while giving deference to the responsibility of the jury 'to fairly resolve

3

conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.'" *Id.* (quoting *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson*, 443 U.S. at 318–19; *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007)).

"Legal sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge." *Id.* at 298 (quoting *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)). "The 'hypothetically correct' jury charge is 'one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried.'" *Id.* (quoting *Malik*, 953 S.W.2d at 240).

**B.      Analysis**

Under the applicable statute and the indictment, to obtain a conviction, the State was required to prove beyond a reasonable doubt that Holiness, (1) having been previously convicted of a felony, (2) intentionally and knowingly (3) possessed a firearm (4) before the fifth anniversary of his release from supervision under parole. *See* TEX. PENAL CODE ANN. § 46.04(a)(1). In its indictment, the State alleged that Holiness,

> having been convicted of the felony offense of fraudulent use/possession of identifying information, where the number of items are fewer than five, on the 21st day of March 2019, in cause number F-1921211, in the 292nd Judicial District Court of Dallas County, Texas, in a case on the docket of said Court and entitled The State of Texas v. Demondre Deshawn Holiness, intentionally or knowingly possess[ed] a firearm before the fifth anniversary of the defendant's release from confinement following conviction of said felony.

4

The State introduced the March 2019 underlying state jail felony conviction resulting in a sentence of six months' confinement in state jail, as well as Holiness's April 16, 2019, jail intake photographs, which proved that Holiness was within five years of any release from confinement, and Holiness admitted on dash camera footage that he was recently released from custody.[2]  Yet, because no firearm was found, Holiness challenges the sufficiency of the evidence showing that he possessed any firearm.

Holiness admits that a recorded jailhouse call, which was admitted into evidence, established that he had a firearm.  During the call, Holiness told his friend that he threw his weapon on the ground and instructed him to go between two specific bushes to retrieve it.  Holiness told his friend to get the gun, which he called a "pole," before it rained because he did not want to lose it or have others find it.  Holiness then instructed the friend to pawn the weapon.

Even so, Holiness argues that the corpus delecti rule precludes a finding that he possessed a firearm based solely on his extrajudicial confession.  *See Miller v. State*, 457 S.W.3d 919, 920

---

[2]As we have previously noted,

> Section 46.04 does not "necessarily require proof of the date of release from confinement in all cases." *Tapps v. State*, 257 S.W.3d 438, 445 (Tex. App.—Austin 2008), *aff'd on other grounds*, 294 S.W.3d 175 (Tex. Crim. App. 2009).  As explained by our sister court:
>
>> Under Section 46.04, the period during which firearm possession by a felon is forbidden begins on the date of conviction (the date one is "convicted of a felony") and ends on the fifth anniversary of the person's release from confinement or the person's release from any form of supervision or parole, whichever date is later.  Thus, the minimum period that a felon will be prohibited from possessing a firearm—assuming the felon is released from confinement or supervision on the date of conviction or is never confined[—]is five years from the date of conviction.  The date of release from confinement is necessary to determine the maximum length of this period specifically when the period extends beyond five years from the date of conviction.  The date of release from confinement is not necessary when the alleged possession occurs within five years of the date of conviction because the period of prohibition extends for this duration in any event.
>
> *Id.* (citations omitted).

*Fagan v. State*, 362 S.W.3d 796, 800 (Tex. App.—Texarkana 2012, pet. ref'd).

5

(Tex. Crim. App. 2015); *see also Fisher v. State*, 851 S.W.2d 298, 302 (Tex. Crim. App. 1993). The term "corpus delicti" means the "harm brought about by the criminal conduct of some person." *Gribble v. State*, 808 S.W.2d 65, 70 (Tex. Crim. App. 1990). The Court of Criminal Appeals has explained the corpus delicti rule, stating, "When the burden of proof is 'beyond a reasonable doubt,' a defendant's extrajudicial confession does not constitute legally sufficient evidence of guilt absent independent evidence of the corpus delicti." *Hacker v. State*, 389 S.W.3d 860, 865 (Tex. Crim. App. 2013).

The corroborating evidence requirement ensures that a person admitting to a crime is not convicted without independent evidence that the crime occurred. *Salazar v. State*, 86 S.W.3d 640, 644 (Tex. Crim. App. 2002). "The corroborating evidence need not prove the underlying offense conclusively; there simply must be some evidence that renders the commission of the offense more probable than it would be without the evidence." *McCann v. State*, 433 S.W.3d 642, 646 (Tex. App.—Houston [1st Dist.] 2014, no pet.) (citing *Gonzales v. State*, 190 S.W.3d 125, 131 (Tex. App.—Houston [1st Dist.] 2005, pet. ref'd)). "[T]he extrajudicial statement itself is not ignored. It may be used in connection with the other facts and circumstances to aid the proof of the corpus delecti." *Harris v. State*, 521 S.W.3d 426, 428 (Tex. App.—Amarillo 2017, pet. ref'd) (citing *Salazar v. State*, 86 S.W.3d 640, 644–45 (Tex. Crim. App. 2002) (stating that the rule is satisfied "if some evidence exists outside of the extra-judicial confession which, considered alone or in connection with the confession, shows that the crime actually occurred"); *Watson v. State*, 227 S.W.2d 559, 562 (Tex. 1950)). We must, therefore, consider whether independent evidence existed to support the jury's finding that Holiness possessed a firearm.

Here, Farmer testified that Holiness reached back into the stolen BMW to grab something before running away. Although Farmer did not see the item grabbed, Hoffman testified that other officers on the scene of the chase said that "something was thrown," and Patterson was asked for help in locating a weapon that "might have been stashed or thrown." While neither Trigiani nor his family owned any weapons, ammunition was found inside the stolen vehicle. We find that this evidence corroborated Holiness's statements that he threw a gun in between two bushes during the chase. As a result, we find that sufficient evidence supported the jury's finding of guilt, and we overrule Holiness's first point of error.

## III. There Was No Jury Charge Error

"We employ a two-step process in our review of alleged jury charge error." *Murrieta v. State*, 578 S.W.3d 552, 554 (Tex. App.—Texarkana 2019, no pet.) (citing *Abdnor v. State*, 871 S.W.2d 726, 731 (Tex. Crim. App. 1994)). "Initially, we determine whether error occurred and then evaluate whether sufficient harm resulted from the error to require reversal." *Id.* (quoting *Wilson v. State*, 391 S.W.3d 131, 138 (Tex. App.—Texarkana 2012, no pet.) (citing *Abdnor*, 871 S.W.2d at 731–32)).

"The purpose of the jury charge is to inform the jury of the applicable law and guide them in its application to the case." *Beltran De La Torre v. State*, 583 S.W.3d 613, 617 (Tex. Crim. App. 2019) (quoting *Hutch v. State*, 922 S.W.2d 166, 170 (Tex. Crim. App. 1996)). "A trial judge must maintain neutrality in providing such information and guidance." *Id.* (citing *Brown v. State*, 122 S.W.3d 794, 798 (Tex. Crim. App. 2003)). "He or she may not express any

7

opinion on the weight of the evidence or draw the jury's attention to particular facts." *Id.* (citing

*Brown*, 122 S.W.3d at 798, 801). To refrain from commenting on the weight of the evidence,

> Article 36.14 of the Texas Code of Criminal Procedure provides that a jury charge: (1) must be in writing; (2) must "distinctly set[] forth the law applicable to the case[";] (3) cannot "express[] any opinion as to the weight of the evidence"; (4) may "not sum[] up the testimony"; and (5) cannot "discuss[] the facts or us[e] any argument in [the] charge calculated to arouse the sympathy or excite the passions of the jury."

*Id.* (all but second alteration in original) (quoting TEX. CODE CRIM. PROC. ANN. art. 36.14).

"This rule is designed to prevent a jury from interpreting a judge's comments as a judicial

endorsement or imprimatur for a particular outcome." *Id.* (citing *Bartlett v. State*, 270 S.W.3d

147, 150 (Tex. Crim. App. 2008) ("[A] trial court should avoid any allusion in the jury charge to

a particular fact in evidence, as the jury might construe this as judicial endorsement or

imprimatur.")).

Holiness argues that the trial court commented on the weight of the evidence by

providing the following definitions:

> *Intentionally Possessed a Firearm*
>
> A person intentionally possesses a firearm if the person has the conscious objective or desire to possess the firearm.
>
> *Knowingly Possessed a Firearm*
>
> A person knowingly possesses a firearm if the person is aware that he possesses a firearm.

According to Holiness, these definitions were non-statutory definitions. We disagree.

"Section 6.03 of the Texas Penal Code sets out: four culpable mental states—

intentionally, knowingly, recklessly, and criminally negligently; two possible conduct

8

elements—nature of the conduct and result of the conduct; and the effect of the circumstances surrounding the conduct." *Price v. State*, 457 S.W.3d 437, 441 (Tex. Crim. App. 2015). As a result, the definition of the mens rea applicable to an offense is a statutory definition. *See Cook v. State*, 884 S.W.2d 485, 488 (Tex. Crim. App. 1994). As applicable here, "[a] person acts intentionally, or with intent, with respect to the nature of his conduct, . . . when it is his conscious objective or desire to engage in the conduct," TEX. PENAL CODE ANN. § 6.03(a), and "[a] person acts knowingly, or with knowledge, with respect to the nature of his conduct . . . when he is aware of the nature of his conduct," TEX. PENAL CODE ANN. § 6.03(b).

Because the jury charge must be tailored to the law applicable to the case, "the language in regard to the culpable mental state must [also] be tailored to the conduct elements of the offense." *Price*, 457 S.W.3d at 441. In fact, "[a] trial court errs when it fails to limit the language in regard to the applicable culpable mental states to the appropriate conduct element." *Id.* (citing *Cook*, 884 S.W.2d at 491). We find that the trial court's definitions properly tailored the appropriate statutorily defined mens rea to the conduct element of the alleged offense. As a result, we conclude that there was no jury charge error.[3]

---

[3]Holiness's consolidated brief contains an argument that the trial court erred in submitting a punishment charge that included good conduct time. In support, Holiness cites to Article 37.07, Section 4(a), of the Texas Code of Criminal Procedure, which only applied to Holiness's conviction in the evading arrest companion case. *See* TEX. CODE CRIM. PROC. ANN. art. 37.07, § 4(a) (Supp.). As a result, we do not believe Holiness's brief raises any complaint about the inclusion of good conduct time in this case. If it does, the complaint is meritless since the inclusion of good conduct time was specifically authorized by Section 4(c) of Article 37.07, which applies to third-degree felonies. *See* TEX. CODE CRIM. PROC. ANN. art. 37.07, § 4(c) (Supp.) ("In the penalty phase of the trial of a felony case in which the punishment is to be assessed by the jury rather than the court, if the offense is punishable as a felony of the second or third degree . . . the court shall charge the jury in writing as follows: []The length of time for which a defendant is imprisoned may be reduced by the award of parole. []Under the law applicable in this case, the defendant, if sentenced to a term of imprisonment, may earn early parole eligibility through the award of good conduct time. Prison authorities may award good conduct time to a prisoner who exhibits good behavior, diligence in carrying out

9

## IV. Conclusion

We affirm the trial court's judgment.

Ralph K. Burgess
Justice

Date Submitted: September 13, 2021
Date Decided: October 1, 2021

Do Not Publish

---

prison work assignments, and attempts at rehabilitation. If a prisoner engages in misconduct, prison authorities may also take away all or part of any good conduct time earned by the prisoner.").