

# NUMBER 13-23-00485-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

ROBERT ERNEST MORENO,                                                    Appellant,

v.

THE STATE OF TEXAS,                                                      Appellee.

## ON APPEAL FROM THE 36TH DISTRICT COURT
## OF ARANSAS COUNTY, TEXAS

## MEMORANDUM OPINION

Before Justices Benavides, Longoria, and Silva
Memorandum Opinion by Justice Silva

Appellant Robert Ernest Moreno challenges his convictions for aggravated assault with a deadly weapon and deadly conduct, second- and third-degree felonies enhanced by prior felony convictions.[1] *See* TEX. PENAL CODE ANN. §§ 12.42(d), 22.02(a)(2), 22.05. A jury sentenced Moreno to life imprisonment on both counts. By a single issue, Moreno challenges the sufficiency of the evidence in support of his convictions. We affirm.

## I. BACKGROUND

On June 12, 2022, Aransas County Sheriff's Office (ACSO) Deputy Cody Coulston was dispatched to a trailer park in response to "[s]hots fired in the area." Deputy Coulston spoke to several witnesses, including the complainant Damon Runyan, who identified Moreno as the shooter.

At trial, Runyan testified that he and Moreno were neighbors. On June 12, 2022, the two men had an argument in front of Runyan's trailer, and the argument ended with Moreno telling Runyan that he better "not be there" when Moreno returned. Approximately twenty to thirty minutes elapsed before Runyan saw Moreno approaching Runyan with a gun pointed at his direction. Runyan testified that he immediately ran inside his trailer and heard "three or four" gun shots. When Runyan looked outside, Moreno was gone as was Moreno's truck that had been parked on the street.

Joined by ASCO Investigator Lieutenant Rodney Cox, Deputy Coulston recovered four shell casings around the trailer. Lieutenant Cox identified the casings as X-Treme 9mm Luger hollow points. Lieutenant Cox additionally observed a bullet hole on the steps

---

[1] Moreno pleaded true to the enhancement paragraphs, which included aggravated assault convictions in 1992, 2002, and 2011.

leading to the front door of the trailer. At some unspecified point during the investigation, Lieutenant Cox noted the presence of a Ford F-150 parked across the street that had not been present when officers initially arrived. After confirming Moreno was the registered vehicle owner and securing a search warrant, the officers searched the truck. A gun with a loaded magazine was found inside the vehicle. Lieutenant Cox confirmed that the gun was "capable of firing projectiles consistent with the projectile and casing[s] . . . located at the scene." Approximately two hours after the initial call to law enforcement, officers located Moreno hiding nearby underneath a trailer, and he was taken into custody.

Steven Dees, a neighbor who called law enforcement, also testified. Although Dees did not witness the shooting, he overheard the initial argument between Moreno and Runyan occurring on Runyan's property beforehand, and he had gone outside "to see what was going on." Dees had already retreated inside his trailer when he heard gunshots. Another neighbor, Charlie Mitchell, also testified that Moreno "had tooken [sic] off" but declined to state why or verify whether there had been an argument between Runyan and Moreno preceding Moreno's leave. When asked whether he saw Moreno with a gun, Mitchell repeatedly stated, "I don't know," and maintained that his focus had been "to get the hell out of the way" after he heard gunshots.

Jail phone call recordings were also admitted into evidence, wherein Moreno tells an unidentified female he was in jail because he lost his "motherf[]cking temper" and "got into it with [his] neighbor." In another recording, Moreno told an unidentified male that he needed him to pick up his truck, which he believed to be still parked near his residence.

Moreno further instructed the male to hide a gun, stating it was not "hot" and he had not "hit" anyone with it.[2]

A jury returned guilty verdicts and sentenced Moreno to life imprisonment. This appeal followed.

## II.    SUFFICIENCY

By a single issue, Moreno challenges the sufficiency of the evidence to support his convictions.[3]

## A.    Standard of Review

In reviewing the sufficiency of the evidence to support a conviction, we consider the evidence "in the light most favorable to the verdict" to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Stahmann v. State*, 602 S.W.3d 573, 577 (Tex. Crim. App. 2020) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).

We consider both direct and circumstantial evidence as well as all reasonable inferences that may be drawn from the evidence. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). Circumstantial evidence is as probative as direct evidence in establishing guilt, and circumstantial evidence alone can be sufficient to establish guilt. *Nisbett v. State*, 552 S.W.3d 244, 262 (Tex. Crim. App. 2018). "Each fact need not point

---

[2] Portions of the recorded jail calls were in Spanish and translated at trial.

[3] Moreno purports to challenge both the legal and factual sufficiency of the evidence. However, the Texas Court of Criminal Appeals has abolished factual sufficiency review in cases that do not involve an affirmative defense. *Howard v. State*, 333 S.W.3d 137, 138 n.2 (Tex. Crim. App. 2011) (citing *Brooks v. State*, 323 S.W.3d 893, 894–95 (Tex. Crim. App. 2010) (plurality op.)). Therefore, we will address only Moreno's legal sufficiency challenge.

directly and independently to the guilt of a defendant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction." *Walker v. State*, 594 S.W.3d 330, 335 (Tex. Crim. App. 2020) (citing *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007)). We resolve any evidentiary inconsistencies in favor of the verdict, keeping in mind that the factfinder is the exclusive judge of the facts, the credibility of the witnesses, and the weight to give their testimony. *Id.*; *see* TEX. CODE CRIM. PROC. ANN. art. 38.04.

"The sufficiency of the evidence is measured by comparing the evidence produced at trial to 'the essential elements of the offense as defined by the hypothetically correct jury charge.'" *Curlee v. State*, 620 S.W.3d 767, 778 (Tex. Crim. App. 2021) (quoting *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)). "A hypothetically correct jury charge 'accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried.'" *Id.*

## B.    Applicable Law

"A person commits [aggravated assault] if the person commits assault as defined in § 22.01 and the person uses or exhibits a deadly weapon during the commission of the assault." TEX. PENAL CODE ANN. § 22.02(a)(2). As relevant here, a person commits assault if he intentionally or knowingly threatens another with imminent bodily injury. *Id.* § 22.01(a)(2). A deadly weapon is "anything that in the manner of its use or intended use is capable of causing death or serious bodily injury." *Id.* § 1.07(a)(17)(B). Section

5

1.07(a)(17)(B) "does not require that the actor actually intend death or serious bodily injury; an object is a deadly weapon if the actor intends a use of the object in which it would be capable of causing death or serious bodily injury." *McCain v. State*, 22 S.W.3d 497, 503 (Tex. Crim. App. 2000). "'Serious bodily injury' means bodily injury that creates a substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." TEX. PENAL CODE ANN. § 1.07(a)(46).

A person commits the offense of deadly conduct if "he recklessly engages in conduct that places another in imminent danger of serious bodily injury." *Id*. § 22.05. The penal code further provides that this offense is committed when a person "knowingly discharges a firearm at or in the direction of: (1) one or more individuals; or (2) a habitation, building, or vehicle and is reckless as to whether the habitation, building, or vehicle is occupied." *Id.* § 22.05(b)*.* A defendant's culpable mental state may be inferred from words, acts, or conduct of the accused and from the circumstances under which the act occurred. *See Linden v. State*, 347 S.W.3d 819, 822 (Tex. App.—Corpus Christi–Edinburg 2011, pet. ref'd). "Recklessness and danger are presumed if the actor knowingly pointed a firearm at or in the direction of another whether or not the actor believed the firearm to be loaded." TEX. PENAL CODE ANN. § 22.05(c); *see Safian v. State*, 543 S.W.3d 216, 222 (Tex. Crim. App. 2018).

**C.    Analysis**

With respect to Moreno's aggravated assault conviction, he argues that the evidence was insufficient to prove beyond a reasonable doubt that he held a firearm or

threatened Runyan with imminent bodily injury. We disagree. The evidence viewed in the light most favorable to the verdict establishes that Moreno held and pointed a loaded firearm at Runyan. *See Walker*, 594 S.W.3d at 335. Runyan testified that following an argument in front of Runyan's trailer that resulted in Moreno walking away, Moreno warned Runyan to leave the area before Moreno returned. Approximately twenty to thirty minutes later, Runyan saw Moreno walking towards him with a gun pointed at his direction, and Runyan ran for cover. Although no words accompanied Moreno's actions, a threat may nonetheless be communicated by Moreno's conduct. *United States v. Taylor*, 596 U.S. 845, 855 (2022) ("Of course, threats can be communicated verbally or nonverbally—pointing a gun at a cashier conveys a threat no less effectively than passing a note reading 'your money or your life.'"). Several Texas courts, including this one, have held that "[t]he act of pointing a loaded gun at an individual is, by itself, threatening conduct which supports a conviction for aggravated assault." *Fagan v. State*, 362 S.W.3d 796, 799 (Tex. App.—Texarkana 2012, pet. ref'd); *see also Frizzell v. State*, No. 12-22-00304-CR, 2023 WL 5663234, at *4 (Tex. App.—Tyler Aug. 31, 2023, pet. ref'd) (mem. op., not designated for publication); *Pena v. State*, No. 14-19-00805-CR, 2021 WL 3924100, at *3 (Tex. App.—Houston [14th Dist.] Sept. 2, 2021, pet. ref'd) (mem. op., not designated for publication); *Zandi v. State*, No. 02-19-00437-CR, 2021 WL 1034157, at *4 (Tex. App.—Fort Worth Mar. 18, 2021, no pet.) (mem. op., not designated for publication); *Mancillas v. State*, No. 13-17-00005-CR, 2018 WL 3470637, at *3 (Tex. App.—Corpus Christi–Edinburg July 19, 2018, pet. ref'd) (mem. op., not designated for publication).

7

Although neither neighbor testified that they witnessed Moreno holding the gun or pointing it at Runyan, they both witnessed the preceding altercation between Moreno and Runyan on Runyan's property and heard gunshots shortly thereafter; a loaded gun with bullets matching the projectiles found outside Runyan's trailer was located inside a vehicle registered to Moreno; Moreno was found hiding under a nearby trailer two hours after the shooting; and Moreno disclosed in jail calls that he had "got into it with [his] neighbor," and believing law enforcement had not yet found the gun used, Moreno asked an individual to hide his gun for him. This is all circumstantial evidence connecting Moreno to the weapon and the weapon's use. *See Hammack v. State*, 622 S.W.3d 910, 918 (Tex. Crim. App. 2021) (noting that circumstantial evidence of a consciousness of guilt includes flight after the offense and attempting to hide or conceal evidence); *see also Farrow v. State*, No. 13-22-00197-CR, 2024 WL 194200, at *5 (Tex. App.—Corpus Christi–Edinburg Jan. 18, 2024, no pet.) (mem. op., not designated for publication) (considering jail call recordings in a sufficiency review wherein the defendant instructed another individual to dispose of evidence found in his vehicle); *see generally Hooper*, 214 S.W.3d at 13 ("Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt."). On these facts, the jury was free to determine that Moreno intentionally or knowingly threatened Runyan with imminent bodily injury while exhibiting a firearm. *See* TEX. PENAL CODE ANN. § 22.02(a)(2); *see also Mancillas*, 2018 WL 3470637, at *3. Measuring the evidence against a hypothetically correct jury charge, we conclude the evidence was

8

sufficient to support Moreno's aggravated assault conviction. *See Malik*, 953 S.W.2d at 240.

Moreno additionally argues that the evidence is insufficient to support his deadly conduct conviction, namely, that he discharged a firearm in the direction of Runyan's habitation. Once more, it is within the jury's sole purview to determine the credibility of the witnesses and to draw reasonable inferences from *all* the evidence presented before them. *See Zuniga v. State*, 551 S.W.3d 729, 733 (Tex. Crim. App. 2018); *see also Dawson v. State*, No. 04-18-00023-CR, 2018 WL 6624505, at *7 (Tex. App.—San Antonio Dec. 19, 2018, pet. ref'd) (mem. op., not designated for publication). Runyan testified, identifying Moreno as shooting at him and in the direction of his trailer; a neighbor confirmed an argument on Runyan's property involving Moreno prior to the shooting; shell casings were located outside Runyan's trailer and officers observed a bullet had struck the front steps of the trailer's entryway; and Moreno hid from law enforcement and sought assistance in hiding a gun following the shooting. *See Hammack*, 622 S.W.3d at 918; *see also Hernandez v. State*, No. 07-22-00253-CR, 2023 WL 4348103, at *3 (Tex. App.— Amarillo June 29, 2023, no pet.) (concluding there was legally sufficient evidence for a reasonable juror to find beyond a reasonable doubt that the appellant discharged a firearm "in the direction of a habitation" because the evidence demonstrated that the complainant's house was behind the car that was struck with a bullet). Having viewed the direct and circumstantial evidence in the light most favorable to the verdict, we conclude that the jury here could have reasonably found that the prosecution met its burden to

prove Moreno committed the offense of deadly conduct. *See Stahmann*, 602 S.W.3d at 577. We overrule Moreno's sole issue on appeal.

### III. CONCLUSION

We affirm the trial court's judgment.

CLARISSA SILVA
Justice

Do not publish.
TEX. R. APP. P. 47.2 (b).

Delivered and filed on the
25th day of July, 2024.