

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

---

No. 07-19-00399-CR

---

THOMAS WAYNE WOMACK, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

---

On Appeal from the 46th District Court
Wilbarger County, Texas
Trial Court No. 12,419, Honorable Dan Mike Bird, Presiding

---

July 29, 2021

## MEMORANDUM OPINION

Before QUINN, C.J., and PIRTLE and DOSS, JJ.

"What goes around, goes around, goes around, comes all the way back around."[1]

This is a case about a failed attempt at exacting revenge. Appellant Thomas Wayne Womack was convicted of aggravated robbery[2] and unlawful possession of a firearm by

---

[1] Justin Timberlake, "What Goes Around…Comes Around," FUTURESEX/LOVESOUNDS, Timbaland. 2006.

[2] TEX. PENAL CODE ANN. § 29.03(a)(2) (West 2019).

a felon.[3]  As a consequence, Appellant received a sentence of thirty years' confinement in prison on each count.  The trial court ordered that the sentences run concurrently.

On appeal, Appellant argues the trial court abused its discretion in refusing to suppress his recorded statement.  He also argues the evidence is insufficient to support his conviction for aggravated robbery and that the trial court erred in overruling his objection to a portion of the prosecutor's rebuttal argument at the guilt-innocence phase of trial.  We overrule all of Appellant's issues and affirm the judgment.

## Background

Mark Gonzales once paid Appellant with counterfeit hundred-dollar bills.  Later, on January 24, 2019, Appellant found Gonzales working as a painting contractor at the Green Tree Inn in Vernon, Texas.  Gonzales was painting in one of the guest room bathrooms; Appellant entered the guest room and said he was seeking a job.  Gonzales instructed him to report the following morning.  In Gonzales' opinion, Appellant was in a hurry to leave.  As Gonzales walked with Appellant to exit the guest room, Gonzales noticed his iPad and phone were missing.  Gonzales asked Appellant to return the items.  Appellant denied taking them and began to leave on a bicycle; he returned when Gonzales yelled at him.

Gonzales summoned Daniel Cruz, who was painting next door, for assistance.  Cruz dialed Gonzales' telephone number; a phone in Appellant's pocket began to ring.

---

[3] TEX. PENAL CODE ANN § 46.04 (West Supp. 2020).

According to Gonzales, Appellant returned the phone to him but claimed not to know how it ended up in his pocket.

Gonzales and Appellant continued to argue about who had the iPad. As Gonzales held the handlebars of the bike to prevent Appellant from leaving, he said Appellant reached into his coat pocket to reveal a handgun. When Gonzales refused to release the handlebars, Appellant pointed the gun at him. Gonzales answered affirmatively when asked if he felt threatened. Cruz also testified he saw the exchange and thought Appellant was going to fire; he described the situation as "pretty scary." Appellant then jumped off the bicycle, wrested it from Gonzales, and rode away. Gonzales called 9-1-1.

Appellant was interviewed while in custody the next day.[4] According to a recording taken of the interview between Vernon police detective Mickey Allen and Appellant, Appellant was first advised of his *Miranda* rights.[5] Appellant indicated he understood his rights. Allen then asked Appellant about the previous night's events at the Green Tree Inn. Initially, Appellant explained he took Gonzales' phone by accident. A moment later, however, Appellant changed his story. Appellant described that when he saw the Green Tree's room was being refurbished, "I ain't gonna lie to you; I see an open opportunity. I was going to go in there and just see, you know, what kind of tools were lying around, shit like that." Appellant said he had entered the room and identified Gonzales as the one who had paid with the counterfeit bills. Appellant then explained, "I told him I'd get him

---

[4] Detective Allen testified Appellant had been taken into custody based on a motion to revoke or charges unrelated to Gonzales' allegations.

[5] *Miranda v. Arizona,* 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

back. Last night I seen the opportunity to get him back. I tried to get his phone. He caught me. And that was it."

The jury convicted Appellant of the two charged offenses, assessed punishment, and the trial court imposed the noted sentences. This appeal followed.

Analysis

First Issue: Suppression of Appellant's Statement

By his first issue, Appellant argues the trial court abused its discretion by failing to suppress his recorded statement because prior to making the statement, while in custody, he was not warned of his right to (1) remain silent and not make any statement and (2) terminate the interview at any time. The State responds this complaint was not preserved in the trial court and is therefore forfeited.

At the suppression hearing the following colloquy occurred:

The Court: [addressing Counsel for Appellant], before we take a look at [the interview], your problems with it?

[Counsel for Appellant]: Judge, that the compliance with 38.22, section 3, that part of the recording is difficult to hear. I'm not going to say it's inaudible, but it's difficult to hear. And under Section 2 of the *Miranda* Rights do not show a complete and intelligent and uncoerced waiver of rights, that his statements at that time he did not have counsel and could not make an intelligent and knowing waiver of his right to counsel or did not make one.[6]

---

[6] In his written motion to suppress, Appellant complained that any statements he made were "involuntary . . . coerced . . . enticed"; that he was "deprived of right to counsel" and "did not make an intelligent and knowing waiver of that right"; that his statements were "tainted by the illegal and unlawful detention and arrest"; that his statements "were taken without the safeguards required by and in violation of Article 38.22 of the Code of Criminal Procedure"; that admission of Appellant's statements violates specified constitutional and statutory provisions; and that portions of the recorded statement were irrelevant and should be excluded under Rule of Evidence 403.

4

Appellant's objection at the suppression hearing challenged the accuracy of the recording of his statement, article 38.22, section 3(a)(3),[7] and his knowing, intelligent, and voluntary waiver of the rights provided by article 38.22, section 2(a)(1)-(5), article 38.22, section 2(b).[8] On appeal, Appellant makes a different complaint arguing he was not informed of two rights provided by the article 38.22, section 2(a) warning.[9]

A motion to suppress is simply a specialized objection to the admissibility of evidence. *Galitz v. State,* 617 S.W.2d 949, 952 n.10 (Tex. Crim. App. 1981). Proper preservation of an objection concerning the admission of evidence requires the objection inform the trial court why, or on what basis, the evidence should be excluded, but generally need not contain "magic words" or recite a specific statute. *Ford v. State,* 305 S.W.3d 530, 533 (Tex. Crim. App. 2009); *see* TEX. R. APP. P. 33.1(a)(1)(A) (error is preserved when the record shows that a "complaint was made to the trial court by a timely request, objection, or motion that . . . stated the grounds for the ruling that the complaining party sought from the trial court with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context[.]). The

---

[7] TEX. CODE CRIM. PROC. ANN. art. 38.22, section 3(a)(3) (West 2018) (requiring "the recording device was capable of making an accurate recording, the operator was competent, and the recording is accurate and has not been altered[.]").

[8] TEX. CODE CRIM. PROC. ANN. art. 38.22, section 2(b) (providing "the accused, prior to and during the making of the statement, knowingly, intelligently, and voluntarily waived the rights set out in the warning prescribed by Subsection (a) of this section.").

[9] TEX. CODE CRIM. PROC. ANN. art. 38.22, section 2(a) (providing "the accused, prior to making the statement, either received from a magistrate the warning provided in Article 15.17 of this code or received from the person to whom the statement is made a warning that: (1) he has the right to remain silent and not make any statement at all and that any statement he makes may be used against him at his trial; (2) any statement he makes may be used as evidence against him in court; (3) he has the right to have a lawyer present to advise him prior to and during any questioning; (4) if he is unable to employ a lawyer, he has the right to have a lawyer appointed to advise him prior to and during any questioning; and (5) he has the right to terminate the interview at any time[.]").

objection must be sufficiently clear that opposing counsel and the trial court may address or correct the claimed deficiency. *Ford,* 305 S.W.3d at 533. An appellate issue that does not match the objection made at the suppression hearing or trial presents nothing for appellate review. *Ibarra v. State,* 11 S.W.3d 189, 197 (Tex. Crim. App. 1999) (concluding nothing preserved for appellate review where objection at trial was hearsay while issue on appeal concerned relevance of testimony); *Garmon v. State,* No. 07-05-00298-CR, 2007 Tex. App. LEXIS 382, at *6 (Tex. App.—Amarillo Jan. 22, 2007, pet. ref'd) (mem. op., not designated for publication) (finding claim of error not preserved when complaint in trial court was "consent or not" for warrantless search while on appeal appellant asserted any consent granted was involuntary). At the commencement of the suppression hearing the trial court asked appellant what his complaint was. He stated two reasons for suppression. But those are not the reasons for error he now argues on appeal. Because Appellant's objection in the trial court does not comport with his complaint on appeal, the claim of error is not preserved for appellate review. Appellant's first issue is overruled.

Second and Third Issues: Sufficiency of the Evidence—Aggravated Robbery

The indictment alleged Appellant "did then and there while in the course of committing theft of property and with intent to obtain or maintain control of the property, intentionally and knowingly threaten or place Mark Gonzales in fear of imminent bodily injury or death, and the defendant did then and there use or exhibit a deadly weapon, to-wit: a firearm[.]" The application paragraph for aggravated robbery in the guilt-innocence charge contained the same language.

In determining whether the evidence is sufficient to support a conviction, a reviewing court must consider all of the evidence in the light most favorable to the verdict and determine whether, based on that evidence and reasonable inferences therefrom, a rational fact finder could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 318-19, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979); *Brooks v. State,* 323 S.W.3d 893, 895 (Tex. Crim. App. 2010) (plurality op.). This "familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson,* 443 U.S. at 319.

"Each fact need not point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction." *Hooper v. State,* 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). And if the record supports conflicting inferences, we must presume that the factfinder resolved the conflicts in favor of the prosecution and therefore defer to that determination. *Jackson,* 443 U.S. at 326. Further, circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt. *Hooper,* 214 S.W.3d at 13. Finally, it is well established that the factfinder is entitled to judge the credibility of witnesses and can choose to believe all, some, or none of the testimony presented by the parties. *Chambers v. State,* 805 S.W.2d 459, 461 (Tex. Crim. App. 1991).

Robbery occurs when a person, in the course of committing theft and with the intent to obtain or maintain control over property intentionally or knowingly threatens or places another in fear of imminent bodily injury or death. TEX. PENAL CODE ANN.

§ 29.02(a)(2) (West 2019). On the other hand, aggravated robbery occurs if a person commits an act of robbery as defined in section 29.02 and, among other acts, uses or exhibits a deadly weapon. TEX. PENAL CODE ANN. § 29.03(2).

## 1. Evidence of theft

We reject Appellant's second issue, viz., that there is insufficient evidence to support the jury's finding that Appellant committed theft, which is a necessary element of robbery and aggravated robbery. Under Texas law, a person commits the offense of theft if he unlawfully appropriates property with intent to deprive the owner of property. TEX. PENAL CODE ANN. § 31.03(a) (West 2019). Appropriation of property is unlawful if it is without the owner's effective consent. *Id.* at. § 31.03(b)(1).

Appellant argues his phone and Gonzales' appeared similar, Gonzales' phone was recovered from Appellant before he left, and that the ipad was never recovered. But our review of the evidence requires us to consider all of the evidence in the light most favorable to the verdict, not in Appellant's favor. *See Jackson*, 443 U.S. at 318-19. Under the proper scope of review, we note the evidence reveals that Gonzales had placed his phone atop his ipad on a dresser in the motel's guest room where he was working. Only as Appellant began to depart the room, Gonzales noticed both items were missing. Gonzales' phone rang in Appellant's pocket when called. Appellant admitted he saw an opportunity to take Gonzales' phone as a way of getting even for Gonzales' payment with counterfeit bills. We hold the evidence was sufficient such that the jury could reasonably have found that Appellant committed theft of Gonzales' phone and ipad.

Appellant's "appropriation" of Gonzales' property occurred when he acquired it or otherwise exercised control over it. TEX. PENAL CODE ANN. § 31.01(4) (West 2019). There is no minimum time requirement. Because the evidence, when viewed in the light most favorable to the verdict, permitted the jury to reasonably have found that Appellant committed theft, we overrule Appellant's second issue.

### 2. Evidence of aggravated robbery

Nor do the elements of aggravated robbery require the State to prove Appellant still retained Gonzales' property at the time of Appellant's assault. *See White v. State*, 671 S.W.2d 40, 41 (Tex. Crim. App. 1984). "[T]he required violence may occur after the offender has abandoned the theft and is escaping." *Carroll v. State*, No. 05-07-01087-CR, 2009 Tex. App. LEXIS 8123, at *3 (Tex. App.—Dallas Oct. 21, 2009, no pet.) (not designated for publication). Robbery requires proof of assaultive conduct "in the course of committing theft" rather than a completed theft. This includes "conduct that occurs in an *attempt* to commit, during the commission, or in immediate flight *after the attempt or commission* of theft." TEX. PENAL CODE ANN. § 29.01(1) (West 2019) (emphasis added).

The Fifth Court of Appeals rejected an argument similar to Appellant's in *Carroll*. There, after being stopped for suspected shoplifting in a Kroger supermarket, the defendant attempted to flee, dropping and breaking a bottle of wine from underneath his shirt. The store manager pursued the defendant, who thereafter bit the manager's arm. The defendant's conduct in biting the store manager constituted sufficient proof supporting a robbery conviction notwithstanding his unsuccessful removal of the wine from the store. *Id. See also White*, 671 S.W.2d at 41 (upholding conviction for aggravated

robbery when evidence showed defendant shot victim during the course of escaping after thwarted attempted theft to which he was a party).

In the present case, the State possessed the burden to prove Appellant intentionally and knowingly threatened Gonzales or placed him in fear of imminent bodily injury or death via the use or exhibition of a deadly weapon. TEX. PENAL CODE ANN. § 29.03(a)(2). "The act of pointing a gun at an individual is, by itself, threatening conduct." *Boston v. State,* 373 S.W.3d 832, 840 (Tex. App.—Austin 2012) (citing *Fagan v. State,* 362 S.W.3d 796, 799 (Tex. App.—Texarkana 2012, pet. denied), *aff'd,* 410 S.W.3d 321 (Tex. Crim. App. 2013). The evidence showed that, as in *Carroll* and *White*, Appellant committed assaultive conduct in an attempt to flee. When Gonzales impeded Appellant's flight by holding his bicycle handlebars, Appellant pointed what looked like a "Glock .9" pistol at Gonzales. Gonzales answered affirmatively he felt threatened when the pistol was pointed at him. Cruz testified he thought Appellant was going to fire the weapon; "it was pretty scary." When viewed in the light most favorable to the verdict, the jury could reasonably have found Appellant intentionally and knowingly threatened Gonzales or placed him in fear of imminent bodily injury or death. Appellant's second and third issues are overruled.

Fourth Issue: Claim of Improper Closing Argument by the State

By his fourth issue, Appellant argues that during final rebuttal argument the prosecutor attempted to impermissibly place on Appellant the burden of introducing a motel surveillance video to disprove Appellant's guilt. Evidence indicates that the Green Tree Inn was equipped with surveillance cameras that recorded some of the events. The

parties disagree about the relevance of the footage; neither side presented the video at trial, but Detective Allen testified about what he saw during his review.

During the defense closing argument, Appellant's counsel referred to testimony about the video and argued that the failure of the State to admit the video constitutes reasonable doubt:

> Mickey Allen testified, yeah, there's surveillance video showing him driving up, getting off, going to the door when all this happened. Everybody's testimony is it happened right back out there with that bicycle. Where is the surveillance videos?" Who's got the burden of proof? The charge tells you, the burden of proof rests with the State and what the State is wanting you to do is shift that burden of proof to [Appellant].
>
> * * * But, folks, the surveillance video could have at least been shown. It wasn't. Why wasn't it? Because it didn't show anything, did it? It's not offered into evidence.

In rebuttal, the prosecutor replied to defense counsel's rhetorical question and said, "Those videos were downloaded, provided to me and provided to [defense counsel.]" Defense counsel objected on the ground that the State was not permitted to shift the burden to Appellant to produce evidence. After the objection was overruled and a running objection granted, the prosecutor told the jury that if the video had depicted anything beneficial for Appellant, defense counsel would have played it for the jury.

We review a trial court's ruling on an objection of improper jury argument for abused discretion. *Milton v. State,* 572 S.W.3d 234, 241 (Tex. Crim. App. 2019). The purpose of closing argument is to facilitate the jury's proper analysis of the evidence presented at trial in order to arrive at a just and reasonable conclusion based solely on the evidence. *Harris v. State,* 122 S.W.3d 871, 883 (Tex. App.—Fort Worth 2003, pet.

ref'd). Proper jury argument generally falls within one of four areas: (1) summation of the evidence; (2) reasonable deduction from the evidence; (3) answer to argument of opposing counsel; and (4) plea for law enforcement. *Brown v. State,* 270 S.W.3d 564, 570 (Tex. Crim. App. 2008).

Defense counsel invited the State to respond by arguing the absence of video surveillance evidence showed the State had not carried its burden of proof. The State's answer to defense counsel's argument is proper. *See Canales v. State,* 98 S.W.3d 690, 695 (Tex. Crim. App. 2003) (responding to opposing counsel's argument is a permissible area of jury argument); *cf. Jackson v. State,* 17 S.W.3d 664, 674 (Tex. Crim. App. 2000) (noting "the prosecutor may comment on the defendant's failure to produce witnesses and evidence so long as the remark does not fault the defendant for exercising his right not to testify."). Moreover, the prosecutor's statements about the surveillance video had little, if any, effect on the jury because testimony previously discussed the footage's limited evidentiary benefit to either side. We hold that the trial court did not abuse its discretion by overruling Appellant's objection to the State's argument. Appellant's fourth issue is overruled.

## Conclusion

Having overruled each of Appellant's issues, we affirm the judgment of the trial court.

Lawrence M. Doss
Justice

Do not publish.

12